WAGNER CONSTRUCTION CO., INC.,
Defendant-Appellant,

v.

Charles NOONAN, Plaintiff-Appellee.

No. 3–180A23.

Court of Appeals of Indiana,
First District.

May 13, 1980.

William A. Elliott, La Porte, for defend-
ant-appellant.

RATLIFF, Judge.

## STATEMENT OF THE CASE

Wagner Construction Company, Inc. (Wagner) appeals from a small claims judgment in the amount of $632.66 entered against it by the La Porte County Court, La Porte Division, in favor of Charles Noonan, which judgment is predicated upon an alleged breach of implied warranty of habitability. We reverse.

## FACTS

Wagner constructed a new dwelling house for Elmer and Anna Hill. In June, 1978, approximately five (5) years following the completion of the house, Noonan purchased the house from the Hills. Noonan commenced occupancy of the house on June 26, 1978. On July 4, 1978, a problem arose concerning the septic tank system, causing raw sewage to back into the basement and accumulate upon the basement floor. Noonan called a plumbing contractor (Geisler) who opened the septic tank lead-in piping and, noticing a bow or dip in the pipe, routed out the pipe to the septic tank. At that point, Geisler believed there was some sort of blockage at the septic tank level. However, as a result of the procedure employed by Geisler, the septic system was opened and was usable until a similar occurrence on January 13, 1979. Noonan again called Geisler, and the same procedure was repeated. A week later the problem recurred, and again Geisler was called to repeat the procedure of opening the sewer line to the septic tank. At this time, Geisler recommended digging to the septic tank in order to ascertain the exact nature of the difficulty, but because it was winter, such was not done. When the same thing happened again in April, excavation was performed, the septic tank opened, and it was discovered that the lead-in pipe extended some three (3) feet into the septic tank. Wagner admits that this was defective construction and such defect was the cause of

the troubles experienced by Noonan. Noonan had no knowledge of any septic tank malfunctions when he purchased the house, his first awareness of such being the July 4, 1978, incident. Noonan testified that he had bills in excess of $400.00 for repairing the septic system plus other expenses.[1]

Noonan was the only witness in his behalf. There is no testimony by Noonan that he ever notified Wagner of the sewage backing up or requested him to remedy the matter. David Wagner, president of the corporation, testified that his first knowledge of Noonan's septic tank problem was derived from the filing of this action. Wagner did testify that in November 1978 Noonan called him and asked what could be done about changing some drainage pipes inside the house, but that he was not made aware of the nature of the problem. Further, Wagner testified that he was never contacted in regard to making any repair, that he was not requested to come to the house to inspect, and that he was never given an opportunity to make any repair.

## ISSUES

1. Whether the extension of the Implied Warranty of Fitness For Habitation to a second purchaser in the absence of privity of contract is contrary to law.

2. Whether a breach of the Implied Warranty of Fitness For Habitation may be applied against the builder, when the builder was not notified of the problem by the second purchaser and consequently had no opportunity to cure or correct the problem.

3. Whether the judgment of the Court was for an excessive amount and whether said judgment was supported by sufficient evidence.

4. Whether a period of five years is an excessive time period to extend the Implied Warranty of Fitness For Habitation against the original builder.

---

1. Apparently, a report from Geisler, together with some repair cost estimates or repair bills, were presented at the trial of this case in small claims court. The record does not reveal that such were admitted into evidence, and such documents are not included in the record on appeal.

5. Whether there exists sufficient evidence in the record to prove that the defect herein was serious enough to warrant application of the Implied Warranty of Habitability.

## DECISION

■ Prior to our discussion of the issues presented, we note that this is an appeal from small claims court. Noonan, the plaintiff and appellee, appeared *pro se* in that proceeding and has not filed an appellee's brief in this court. Where an appellee fails to file a brief, if the appellant's brief presents a *prima facie* showing of reversible error, the judgment will be reversed. *Costanzi v. Ryan,* (1978) Ind.App., 370 N.E.2d 1333; *Michels v. Young Metal Products, Inc.,* (1971) 148 Ind.App. 502, 267 N.E.2d 572; *Mitchell v. Lawson,* (1969) 145 Ind. App. 141, 250 N.E.2d 259.

Further, although our reversal is based upon the second issue raised on appeal, we believe the other issues, except the third, to bear such a significant relation to that issue and to be of sufficient importance to make appropriate discussion of all issues raised in this appeal other than the third issue. We will discuss the issues in the following order: one, four, five, two, and three, since we believe such order presents the issues in the most logical manner.

*Issue One*

■ Wagner contends that extension of the implied warranty of fitness for habitation to the second purchaser of a residence in the absence of privity of contract is contrary to law. Such argument comes too late, for our Supreme Court has held that the protection of the implied warranty of fitness for habitation extends to such subsequent purchaser in the case of latent defects which become manifest after the purchase and which are not discoverable by the

subsequent purchaser's reasonable inspection. *Barnes v. Mac Brown & Co.,* (1976) 264 Ind. 227, 342 N.E.2d 619.

In 1971, Indiana joined the growing number of jurisdictions discarding the rule of *caveat emptor* and adopting the doctrine of implied warranty of fitness for habitation as applied to the purchase of a new dwelling house from a builder-vendor. *Theis v. Heuer,* (1971) 149 Ind.App. 52, 270 N.E.2d 764, *transfer granted and opinion adopted* (1972) 264 Ind. 1, 280 N.E.2d 300.[2] Although this implied warranty of fitness for habitation has been restricted to the first purchaser by many courts, Indiana became one of the first states to extend the warranty to subsequent purchasers in *Barnes v. Mac Brown & Co., supra.* There our Supreme Court, in a majority opinion by Justice Arterburn, likened the purchase of a home to a purchase of personal property, citing *J. I. Case Co. v. Sandefur,* (1964) 245 Ind. 213, 197 N.E.2d 519. The Court in *Sandefur* had held that a purchaser of used farm machinery was not precluded by absence of privity of contract from suing the manufacturer. In *Barnes* the Court said at 264 Ind. 229, 342 N.E.2d 620–621:

"The logic which compelled this change in the law of personal property is equally persuasive in the area of real property. Our society is an increasingly mobile one. Our technology is increasingly complex. The traditional requirement of privity between a builder-vendor and a purchaser is an outmoded one. The facts of *Theis v. Heuer, supra,* did not require us to extend a builder-vendor's implied warranty of fitness for habitation beyond the first purchaser. We do so now.

"As with our treatment of the sale of personal property, the manufacturer of a home must be accorded reasonable freedom and protection. This extension of

**2.** *Theis v. Heuer, supra,* contains an excellent and thorough history of the development of the transition from *caveat emptor* to the implied warranty of fitness for habitation. Other very good cases discussing the rationale of the change to the warranty of habitability are *Tavares v. Horstman,* (1975) Wyo., 542 P.2d 1275, which case cites *Theis v. Heuer* as authority,

and *Humber v. Morton,* (1968) Tex., 426 S.W.2d 554. In *Tavares, supra,* the Supreme Court of Wyoming stated at 542 P.2d 1279:

"It ought to be an implicit understanding of the parties that when an agreed price is paid that the home is reasonably fit for the purpose for which it is to be used—that it is reasonably fit for habitation. . . . ."

liability is limited to latent defects, not discoverable by a subsequent purchaser's reasonable inspection, manifesting themselves after the purchase. The standard to be applied in determining whether or not there has been a breach of warranty is one of reasonableness in light of surrounding circumstances. The age of a home, its maintenance, the use to which it has been put, are but a few factors entering into this factual determination at trial."

And further at 264 Ind. 230, 342 N.E.2d 621, the Court said:

"Finally, we again observe that the defect in question must be latent or hidden. The burden is upon the claimant to show that the defect had its origin and cause in the original builder-seller."

In adopting the rule of extension of the implied warranty of fitness for habitation to the second purchaser, relying upon *Barnes v. Mac Brown, supra,* the Supreme Court of Wyoming in *Moxley v. Laramie Builders, Inc.,* (1979) Wyo., 600 P.2d 733, said, at 735:

"In *Tavares v. Horstman, supra,* this court fully discussed the socio-economic background and reasoning behind abandonment of the doctrine of caveat emptor and its accouterments in the sale of a dwelling as out of harmony with more compassionate and understanding views. The mores of the day have changed and the ordinary home buyer is not in a position to discover hidden defects in a structure. A home buyer should be able to place reliance on the builder or developer who sells him a new home, the purchase of which in so many instances, is the largest single purchase a family makes in a lifetime. Courts will judicially protect the victims of shoddy workmanship. Consumer protection demands that those who buy homes are entitled to rely on the skill of the builder and that the house is constructed so as to be reasonably fit for its intended use. The average purchaser is without adequate knowledge or opportunity to make a meaningful inspection of the component parts of a residential structure.

"We can find no reason not to apply the basic concepts leading to establishment of the rules of *Tavares* to builders generally, and to a purchaser subsequent to the first owner. . . ."

And further at 735–736:

"There is a paucity of precedent on the liability of a builder to a second buyer or owner. However, *Barnes v. Mac Brown & Co., Inc.,* 1976, 264 Ind. 227, 342 N.E.2d 619, furnishes a reasonably workable rule. A builder's implied warranty of fitness for habitation runs not only in favor of the first owner but extends also to subsequent purchasers. However, this implied warranty is limited to latent defects which are not discoverable by the subsequent purchasers by reasonable inspection and which become manifest only after the purchase. . . .

"The purpose of a warranty is to protect innocent purchasers and hold builders accountable for their work. With that object in mind, any reasoning which would arbitrarily interpose a first buyer as an obstruction to someone equally as deserving of recovery is incomprehensible. . . .

"No reason has been presented to us whereby the original owner should have the benefits of an implied warranty or a recovery on a negligence theory and the next owner should not simply because there has been a transfer. Such intervening sales, standing by themselves, should not, by any standard of reasonableness, effect an end to an implied warranty or, in that matter, a right of recovery on any other ground, upon manifestation of a defect. The builder always has available the defense that the defects are not attributable to him. . . .

"In conclusion, we summarize the rules of this case. A home builder's implied warranty of fitness for habitation extends to subsequent purchasers for a *reasonable* length of time and is limited to latent defects which become manifest after the purchase. A builder of a home is also liable for damages which are foresee-

able and which are caused by his negligence, to subsequent purchasers of such a home with whom he has no contractual relation even though his work is accepted by the first owner before the damage became manifest."

We believe that the evidence brings this case squarely within the rules enunciated in *Barnes v. Mac Brown, supra*, and amplified by *Moxley v. Laramie Builders, supra.* The septic system was admittedly defective, the defect was not discoverable by Noonan upon reasonable inspection, and the defect manifested itself subsequent to the purchase. Therefore, Issue One must be resolved against Wagner.

*Issue Four*

Wagner contends that a period of five years is an excessive time period to extend the implied warranty of fitness for habitation against the original home builder. Under the facts in this case, we do not agree.

 The duration of the implied warranty of fitness for habitation is determined by the standard of reasonableness. *Barnes v. Mac Brown & Co., supra*; *Tavares v. Horstman, supra*; *Moxley v. Laramie Builders, Inc., supra.* (*See also Padula v. J. J. Deb-Cin Homes, Inc.*, (1973) 111 R.I. 29, 298 A.2d 529; *Smith v. Old Warson Development Co.*, (1972) Mo., 479 S.W.2d 795.) In determining the length of the reasonable time which is the duration of the warranty in any given case, many factors may be considered, and some of those factors are delineated in the previously quoted portion of *Barnes v. Mac Brown, supra.* We cannot say, as a matter of law, in this case, that five years is too long a period of time to extend the implied warranty of fitness for habitation as applied to a latent defect in a septic system which manifested itself after the purchase of the house. We believe it to be a matter of common knowledge that the expected efficient life of a properly installed septic system in a newly constructed dwelling is greater than five years.[3] There-

fore, we believe there was no error as to this issue.

*Issue Five*

Wagner questions whether the evidence was sufficient to prove that the defect in the septic tank system was serious enough to warrant application of the implied warranty of habitability. Wagner contends there is no evidence that Noonan was compelled to vacate the house, being unable to reside therein because of the septic tank problem, nor evidence that the health department or other appropriate government agency condemned the house, and therefore, the defect does not rise to such a level as to constitute a breach of the warranty. Wagner says that at most there was an inconvenience to Noonan occasioning repairs and costs incidental thereto, but no factual situation of such severity as would support a finding of breach of the habitability warranty. We do not agree.

 The implied warranty of fitness for habitation does not require that the dwelling be rendered totally uninhabitable before there is a breach of the warranty. Rather, breach of the warranty is established by proof of a defect of a nature which substantially impairs the enjoyment of the residence. The amended complaint in *Theis v. Heuer, supra*, alleged that the "defective condition impaired the intended use of said residence, namely, inhabitation; . . ." It was held there that such complaint stated a claim upon which relief could be granted.

 The depositing of raw sewage in the basement of a residence as a result of the improper functioning of an admittedly defectively constructed and installed septic tank system is more than a minor inconvenience. Such a condition, it seems to us, would clearly be of such a nature as to impair substantially the intended use and enjoyment of the dwelling for habitation.

---

**3.** The builder-vendor need not fear the extension of the implied warranty of fitness for habitation into the distant future, since, in our opinion, all such claims would be put to rest finally at the expiration of ten years from the date of substantial completion of the dwelling pursuant to IC 34–4–20–2.

In *Tavares v. Horstman, supra,* the septic system backed sewage to a depth of about three inches into the plaintiff's basement. The court there stated at 542 P.2d 1282: ". . . [t]he premature failure of a sewer system is no trifling matter, so we cannot accept defendant's contention that it was of minor consequence; the house was rendered uninhabitable." There is no indication in the opinion in *Tavares, supra,* that the plaintiffs had to discontinue living in the house.

The evidence in this case does not reveal the extent of the sewage in Noonan's basement. It may not have been as severe as in the *Tavares* case.[4] However, our point is that it is not necessary, as Wagner contends, for the resident of a dwelling to be required to vacate the dwelling completely because of the defect in order to assert a claim for breach of implied warranty of fitness for habitation. It is sufficient to support such a claim if, because of the defect, the owner's use and enjoyment of his dwelling as a place of human habitation was substantially impaired. Further, in a case such as this, where the owner is a subsequent purchaser, the *Barnes v. Mac Brown* test must be met, that is, the defect must be latent, not discoverable by reasonable inspection, manifesting itself after the purchase.

*Issue Two*

▮ Wagner argues that a breach of implied warranty of fitness for habitation may not be asserted against a builder where the builder was not notified of the problem and had no opportunity to remedy the defect. With this contention we agree, and it is for this reason that we reverse the judgment.

In applying the implied warranty of fitness for habitation to the sale of new residences, the courts compared sales of residences where *caveat emptor* was the rule to sales of personal property where implied warranties of merchantability and fitness were imposed, and found no logical reason for any difference in treatment of such sales. *Theis v. Heuer, supra ; Barnes v. Mac Brown & Co., supra.* In the personal property cases, notice of the breach has been held to be a condition precedent to recovery. *Thompson Farms, Inc. v. Corno Feed Products,* (1977) Ind.App., 366 N.E.2d 3,[5] (relying upon the provision of the Uniform Commercial Code, IC 26–1–2–607(3)(a)). This precise issue was before the Supreme Court of California in *Pollard v. Saxe & Yolles Development Co.,* (1974) 12 Cal.3d 374, 115 Cal.Rptr. 648, 525 P.2d 88, a case in which the defendants had five apartment buildings constructed in 1961, which were conveyed to the plaintiffs who took possession on April 1, 1963. At the time of taking possession, the plaintiffs were aware of certain defects such as ceilings buckling, sliding doors sticking, and water standing on patio decks. It was later determined that these defects resulted from the installation of beams which were of inadequate support. Plaintiffs did not notify the defendants until January 1967 and suit was filed on February 3, 1967, more than three years, but less than four years, after both actual and constructive notice of the damage. The California Supreme Court held that there was an implied warranty of quality and fitness, but denied recovery because plaintiffs did not give timely notice of breach of warranty, saying that a similar requirement should apply as in the case of the sale of goods and further stating:

---

4. It is to be noted that this case was heard in small claims court under the very informal procedures prescribed by Ind.Rules of Procedure, Small Claims Rules, wherein Noonan appeared *pro se.* While we endorse the small claims procedure as an efficient and expeditious means of resolving disputes of minor monetary amounts, we recognize that there are shortcomings existing in those procedures which do not always present as complete a record as might be desired for appellate review.

5. In *Thompson Farms, supra,* the court held that under IC 21–1–2–607(3)(a) notice of the breach of warranty was a substantive condition precedent and that the party claiming breach of warranty must allege that notice was given. Since this case was brought in small claims court, we do not believe that Ind.Rules of Procedure, Small Claims Rule 2(B) requires such particularity of pleading.

". . . The requirement of notice of breach is based on a sound commercial rule designed to allow the defendant opportunity for repairing the defective item, reducing damages, avoiding defective products in the future, and negotiating settlements. The notice requirement also protects against stale claims. [Citations omitted.] These considerations are as applicable to builders and sellers of new construction as to manufacturers and dealers of chattels.

"The buyer is required to give notice within a reasonable time after he discovers or should have discovered the breach of warranty. [Citations omitted.] In April 1963, plaintiffs were aware the ceiling was buckling and walls were not straight in one apartment, sliding glass doors were sticking, and water was remaining on decks after rainfalls. Although possibly not aware of the causes, they knew of the defects for nearly four years before giving notice. We therefore uphold the trial court's determination that the action for breach of warranty is barred by unreasonable delay in giving notice."

115 Cal.Rptr. at 652, 525 P.2d at 92.

In this case, there is no evidence that Noonan ever gave any notice of the alleged breach of warranty to Wagner. The septic tank problem first occurred in July 1978 and later manifested itself in January 1979 and again in April. We do not consider a contact in November 1978 at a time when no difficulty with the septic system was being encountered, concerning some possible but unspecified change in interior piping, as constituting any notice to Wagner of any possible defect in the septic system. David Wagner's testimony stands unrefuted that the septic tank was never mentioned and that his first knowledge of any alleged defect was the filing of this action.

We hold that before a purchaser of a residence may seek damages from the builder-vendor for an alleged breach of implied warranty of fitness for habitation, wherein the damages sought are based upon the cost of repair or diminution in value of the residence, the purchaser must, as a condition precedent to recovery, give notice of the defect and alleged breach of warranty to the builder-vendor thus affording the builder-vendor an opportunity to remedy the defect. No particular form of notice is required, but the purchaser must at least inform the builder-vendor of the problem and give him a reasonable opportunity to cure or repair. Noonan did not meet the test of this condition precedent and, therefore, the judgment in his favor must be reversed on this ground.

*Issue Three*

Wagner contends that the judgment below was excessive and not supported by sufficient evidence. Since we are reversing the judgment on the basis of the second issue a discussion of this issue is unnecessary.

The judgment of the trial court is reversed.

ROBERTSON, P. J., and NEAL, J., concur.