778 P.2d 1299

**Albert C. SHEIBELS and Katherine R. Sheibels, husband and wife, Plaintiffs/Appellees,**

v.

**ESTES HOMES, an Arizona general partnership, Defendant/Appellant.**

**No. 2 CA–CV 88–0165.**

Court of Appeals of Arizona, Division 2, Department B.

Feb. 23, 1989.

Reconsideration Denied April 13, 1989.

Review Denied Sept. 19, 1989.*

Barassi & Burris, P.C. by Carol V. Cromwell, Tucson, for plaintiffs/appellees.

---

\* Feldman, V.C.J., of the Supreme Court, recused himself and did not participate in the determination of this matter.

Parrish & Vingelli by Michael J. Vingelli, Tucson, for defendant/appellant.

## OPINION

LACAGNINA, Chief Judge.

Estes Homes appeals from the denial of its pretrial motion for summary judgment based on its argument that the implied warranty of fitness had expired because of the age of the home in question. After hearing the evidence at trial, the jury awarded Albert C. and Katherine R. Sheibels, the owners of the house, $40,000 in damages based on evidence of $38,000 for repair of termite damage, $600 for repair of a shower floor, and costs for termite treatment.

The case was properly submitted to the jury; there was sufficient evidence to support the verdict, and the only issue on appeal is whether under the facts of this case the builder's implied warranty of fitness had expired as a matter of law because the action to enforce the warranty was brought in 1986, four years after the Sheibels purchased the home and 14 years after it was constructed. Estes also argues that the lack of a reasonable inspection by the Sheibels prior to purchase precluded an extension to them of the implied warranty.

We agree with Estes that its implied warranty of fitness did not extend for 14 years and that Sheibels made no reasonable inspection for structural damage prior to purchase. We reverse the judgment of the trial court denying its motions for summary judgment and directed verdict and set aside the jury verdict and judgment.

## FACTS

The relevant facts are stated in favor of Sheibels, who received the jury verdict supporting their version of the facts. Sheibels purchased a home in June of 1982 that was originally built for someone else by Estes in 1972. The Sheibels made no inspection for termite damage at the time they purchased the ten-year-old home. In November 1982, the Sheibels hired an exterminating company to treat the home for ter-

mites. The exterminating company repeated the treatments with little success until a crack in the slab was discovered in 1985 running parallel to the master bedroom wall and passing a bathroom shower. An expert believed that additional moisture leaking into the crack from the shower had diluted the chemicals used between 1982 and 1985 and thereby hampered termite control. No one could testify as to the age of the termite damage discovered in the home or whether the home was treated for termite infestation after the original purchase in 1972 and prior to November 1982.

The shower floor was replaced and a membrane installed to prevent leakage at a cost of approximately $600. Costs for termite damage to studs, drywall, etc. were estimated at $38,000. The treatment of the soil at the time of construction in 1972 was estimated to be effective for not more than five years, and testimony by experts at trial established that if a home is not treated after the initial treatment, it can be assumed the home will suffer termite damage. The experts also testified that exterminating companies warrant their treatment for five years and inspect periodically during the warranty period and spot treat when necessary.

## BUILDER'S IMPLIED WARRANTY OF FITNESS

The law in Arizona clearly establishes a builder's implied warranty of habitability and proper workmanship and extends the warranty to subsequent purchasers. *Richards v. Powercraft Homes, Inc.,* 139 Ariz. 242, 678 P.2d 427 (1984). However, the implied warranty is not unlimited, and the builder is not an insurer for subsequent purchasers. The supreme court noted in *Powercraft* as follows:

The implied warranty of habitability and proper workmanship is not unlimited. It does not force the builder-vendor to "act as an insurer for subsequent vendees" as the Court of Appeals feared, *Richards, supra,* 139 Ariz. at 267, 678 P.2d at 452. It is limited to latent defects which become manifest after the subsequent owner's purchase and which

were not discoverable had a reasonable inspection of the structure been made prior to purchase. We adopt the standard set forth by the Indiana Supreme Court in [*Barnes v. Mac Brown & Co., Inc.*, 264 Ind. 227, 342 N.E.2d 619 (1976)].

"The standard to be applied in determining whether or not there has been a breach of warranty is one of reasonableness in light of surrounding circumstances. The age of a home, its maintenance, the use to which it has been put, are but a few factors entering into this factual determination at trial."

264 Ind. at 229, 342 N.E.2d at 621.

139 Ariz. at 245, 678 P.2d at 430. In *Moxley v. Laramie Builders, Inc.*, 600 P.2d 733 (Wyo.1979), cited with approval in *Powercraft*, the Wyoming Supreme Court stated:

In conclusion, we summarize the rules of this case. A home builder's implied warranty of fitness for habitation extends to subsequent purchasers for a *reasonable length of time* and is limited to latent defects which become manifest after the purchase.

600 P.2d at 736 (single emphasis in opinion; double emphasis added). Because the implied warranty is not unlimited in time, and the standard to be applied to each factual situation is reasonableness, we hold that the facts presented by this case fail to meet the reasonableness standard as to both length of time from construction to discovery of damage by a subsequent purchaser and as to inspection prior to purchase.

The only case discussing as a matter of law the reasonable length of time during which the implied warranty is extended after construction and first sale is *Wagner Construction Co., Inc. v. Noonan*, 403 N.E.2d 1144 (Ind.App.1980). In *Wagner* the Indiana Court of Appeals stated:

1. A.R.S. § 32–1132 limits claims against a contractor's recovery fund within two years from completion if the claim is under $15,000. Sheibels' claim was not made pursuant to this statute.

Wagner contends that a period of five years is an excessive time period to extend the implied warranty of fitness for habitation against the original home builder. Under the facts in this case, we do not agree.

The duration of the implied warranty of fitness for habitation is determined by the standard of reasonableness.... In determining the length of the reasonable time which is the duration of the warranty in any given case, many factors may be considered, and some of those factors are delineated in the previously quoted portion of *Barnes v. Mac Brown, supra.* We cannot say, as a matter of law, in this case, that five years is too long a period of time to extend the implied warranty of fitness for habitation as applied to a latent defect in a septic system which manifested itself after the purchase of the house. We believe it to be a matter of common knowledge that the expected efficient life of a properly installed septic system in a newly constructed dwelling is greater than five years.[3]

3. The builder-vendor need not fear the extension of the implied warranty of fitness for habitation into the distant future, since, in our opinion, all such claims would be put to rest finally at the expiration of ten years from the date of substantial completion of the dwelling pursuant to IC 34–4–20–2.

403 N.E.2d at 1149 (citations omitted). The fear of unlimited extensions of the implied warranty in the *Noonan* case was disposed of by the statute mentioned in the footnote which eliminated all claims ten years from the date of the house's completion. Arizona has no similar statute.[1]

However, the reasoning in *Noonan* that a properly installed septic tank has an expected efficient life of more than five years and therefore four years was a reasonable extension of the implied warranty, is helpful in deciding the case before us.[2] The

2. *See also Tavares v. Horstman*, 542 P.2d 1275 (Wyo.1975). "Some questions exist as to what should be the period of implied warranty. We appreciate that different parts of construction may have a different expected life, such as a foundation compared to a roof. We have no problem in the present case because the septic

builder-vendor treats the soil of a newly-built house against termites, but it is expected that the treatment will last no longer than five years. We can say then that as a matter of law it is unreasonable to extend the builder's implied warranty for protection from termites beyond the five years intended as the maximum protection. All of the evidence before the trial court before and after the jury trial was undisputed that treatment for termite infestation lasts no more than five years, and exterminators who give that warranty make periodic inspections and spot applications during the five-year period. In addition, it is also undisputed that there was no evidence of continuous chemical treatment prior to the Sheibels' purchase. Our supreme court stated in *Powercraft* that the availability of the implied warranty for subsequent purchasers is limited to latent defects which were not discoverable *had a reasonable inspection of the structure been made prior to purchase.* Termite damage was discovered after purchase and inspection by an exterminator. There is no explanation in the record for Sheibels' failure to have the ten-year-old house inspected for termite damage *prior to purchase.* The evidence at trial was undisputed that the entire Tucson Valley has subterranean termites which thrive in the ground because of the underground water table and the dry climate above ground and that they can and do invade the wood in houses through holes the size of a pin. With no evidence of treatment after the builder's initial treatment, expected to last five years, the experts assumed that a home in the Tucson Valley would sustain termite damage. The builder is not responsible for termite damage discovered more than ten years after original construction, and more than five years after the initial treatment, without evidence of any subsequent inspection or treatment.

Sheibels ask us to treat this case as a defect in the slab and shower which demonstrated a crack and leak ten years after completion rather than as a pest control case. The cost to repair the shower in

tank system failed before a minimum life ex-

1985, 13 years after initial construction, was approximately $600. Under the standard of reasonableness established by *Powercraft*, we find it is unreasonable to extend to a subsequent purchaser the builder's implied warranty as to a defect discovered 13 years after original construction which can be repaired for a small amount as compared to the value of the structure.

Our holding in this case disposes of the Sheibels' argument that the trial court should have awarded them attorneys' fees.

We reverse the judgment of the trial court denying Estes' motion for summary judgment and directed verdict and remand for entry of judgment in favor of Estes and against the Sheibels on their complaint.

ROLL, P.J., and FERNANDEZ, J., concur.

pectancy had been reached." 542 P.2d at 1282.