817 P.2d 55

**James R. and Marjatta A. HERSHEY, husband and wife, Plaintiffs–Appellees.**

**v.**

**RICH ROSEN CONSTRUCTION COMPANY, an Arizona corporation, Defendant–Appellant.**

Nos. 1 CA–CV 90–185, 1 CA–CV 90–228.

Court of Appeals of Arizona, Division 1, Department A.

Aug. 29, 1991.

Steve T. Skivington, Scottsdale, for plaintiffs-appellees.

James Benham, Phoenix, for defendant-appellant.

## OPINION

JACOBSON, Presiding Judge.

This action, brought by a subsequent purchaser of a residential home for damages caused by a builder's faulty stucco application more than twelve years prior to this suit, presents the following issues:

   (1) whether the "reasonable inspection of the structure prior to purchase" required to recover for a latent defect under a theory of implied warranty was met by plaintiffs' inspection or whether an inspection by an expert was required; and

   (2) whether the time period between the stucco installation and the filing of the complaint is an unreasonable time to ex-

tend a home builder's implied warranty of habitability and workmanship for a stucco installation.

*Facts and Procedural Background*

Appellant Rich Rosen Construction Co. (defendant) completed construction of the single family residence at issue in this case and sold it to the initial purchaser on April 1, 1976. In 1985 the initial owner sold the house to its second owner, who later added a room onto a western corner of the house. In November 1985, appellees Hershey (collectively, plaintiff) rented the house from the second owner, and lived there for six months prior to purchasing the residence in May 1986. During that tenancy, plaintiff did not experience any problems with the stucco. Prior to the purchase, plaintiff performed a "walk-around inspection," during which he did not see any cracks or defects in the stucco on the exterior of the house.

In April or May 1987, plaintiff first noticed "some bulging of the stucco on the southwest side of the house." He did not do anything about it at that time because "it didn't look to be a major problem." However, after a heavy rainstorm in August 1987, his daughter heard what she thought was water running behind the bedroom wall on the northwest side of the house. Plaintiff thought the roof might be leaking and went out to check the next day. He testified, "it looked as if the stucco was bulging from the wall. And there was a small hole where a piece had dropped out."

Thinking the stucco problem was due to rain damage, plaintiff filed a claim with his homeowner's insurance company, State Farm Fire & Casualty Co. The insurer responded in September 1987, denying the claim based on the opinion of its retained architect, Dwight L. Busby, P.E.:

[I]t is his determination that the various cracks and loose stucco results from the exterior application being improperly done at the time of construction. It is apparent that none of the exterior application of sheathing, building paper and stucco is weather approved, and it does not meet the Scottsdale Building Code (U.B.C.). Also in accordance with the

building code, a layer of lath should have been applied prior to the application of the stucco.

Soon thereafter, plaintiff discovered the name of defendant, the builder, from his next door neighbor, who was an original owner and who had a similar problem with his stucco in 1979.

Plaintiff retained his own expert to examine the stucco, C. Randal Rushing, the secretary of Wall & Ceiling Industries of Arizona, a professional trade association. In October 1988, Rushing gave plaintiff the following written opinion:

> I would classify the existing Stucco Exterior on your home to be one of the worst examples of material selection and application that I have encountered in the past 10–12 years.
>
> . . . .
>
> There are numerous errors and building code violations in the above assembly.
>
> . . . .
>
> I would categorize the workmanship on this structure (i.e., material selection and workmanship) as below average to almost criminal.

Rushing concluded that the existing construction consisted of gypsum board nailed to the exterior of the wood framing, with a woven fiberglass tape applied vertically to the joints of the gypsum board, with a layer of stucco approximately ⅛" thick covered with a coating of paint. The City of Phoenix Construction Code required, however, as a minimum, two layers of 15 lb. felt over exterior grade gypsum sheathing, with 1 inch 20 gauge wire mesh in the base coat and approved wall assembly of ⅜" to ½" thick.

Plaintiff contacted defendant in March 1988, approximately seven months after he had discovered the problem, and requested that defendant repair the damage; defendant declined. Plaintiff filed a complaint against defendant in June 1988, and by an amended complaint alleged a claim for breach of implied warranty, seeking repair costs of $16,500.00 and attorneys' fees and costs.

Defendant answered, denying the allegations and generally asserting the defenses of statute of limitations, failure to state a claim, waiver, estoppel, and failure to make a reasonable inspection of the premises prior to purchase. After filing cross-motions for summary judgment, the parties stipulated to certain facts, and further agreed that the court should decide the case based on that record as well as on the basis of the testimony in plaintiff's deposition and the expert testimony of C. Randal Rushing.

Among the stipulated facts were defendant's admission that "the workmanship was below average," and that "the particular stucco process applied had deficiencies." Defendant also "agree[d] that the stucco process should last in excess of twelve years."

At the hearing on January 24, 1990, Rushing testified that his inspection of the exterior structure revealed "50 to 60 percent complete delamination of the outside base coat skin, paint coating, from the structure," with "bulges all over the building." The separation of the stucco from the building was apparently caused by the lack of internal reinforcement, or stucco netting. The Uniform Building Code, adopted by the City of Phoenix and the State of Arizona, requires "some type of external reinforcing wire." Rushing's subsequent visits to the house showed "extensive damage recurring. It will not stop." The cracks now go through to the interior perimeter, and the exterior sheathing has deteriorated to "basically mush," from water infiltration through the stucco separation into the gypsum board. Besides the lack of reinforcement, Rushing also testified that the lack of depth of the application was also substandard; "the only thing that's been holding that system on has been the paint."

Most significantly, Rushing testified that a properly applied stucco exterior of this type, with repainting every 10 to 15 years, would reasonably be expected to last from 30 to 50 years. Because of the low rainfall level in this area, the water damage would have taken a long time to become evident to a lay person, who would not be able to ascertain the depth of the materials or the

structure of the application from a visual inspection.

In rendering judgment for plaintiff, the trial court made the following findings of fact and conclusions of law:

1. That the damage to the stucco was caused solely by poor workmanship;
2. That plaintiff's claim was not barred by the statute of limitations;
3. That the damage was not caused by normal wear and tear;
4. That the room addition [built by the previous owners], although a substantial alteration to the premises, did not void defendant's implied warranty of proper workmanship;
5. That the leak in the roof did not contribute to the damage to the stucco;
6. That plaintiff did conduct a reasonable inspection of the residence prior to purchase;
7. That defendant was not entitled to an award of attorneys' fees;
8. That the condition of the exterior walls of the residence constituted a breach of implied warranty by defendant;
9. That plaintiff's damages were $16,500.00;
10. That plaintiff is entitled to reasonable attorneys' fees and costs.

The court further found that "there was no reasonable indication of a serious stucco problem until 1987, when the stucco first began falling off in large pieces and there was bulging in various spots all over the house. This action was then brought within a year of such notice. It was certainly timely for a breach of the [implied] warranty of habitability and proper workmanship which first reasonably evidenced itself only in 1987."

In its minute entry, the court also made the following findings:

There is no statute of limitations defense because in Arizona the builders' implied warranty of habitability and proper workmanship extends to subsequent purchasers. While not unlimited in time, it extends for a reasonable period of time depending on the component part of the house involved. *Sheibels v. Estes Homes,* 28 Ariz.Adv.Rep. 24, 25 [161 Ariz. 403, 405, 778 P.2d 1299, 1301] (App. 2/23/89). While five years may be reasonable for a warranty for a septic tank or for termite protection, because they both have a useful life of approximately five years, the component of exterior stucco has a normal expected life of thirty to fifty years. Therefore, an extension of the warranty on it for twelve years is certainly reasonable. In light of Mr. Rushing's testimony as to the reasonable life span of a properly applied stucco application, the Court finds that the warranty life has not run out here and there is no violation of A.R.S. § 12-548 and its six year statute of limitations.

. . . .

Another of defendant's suggestions of a defense was that plaintiffs failed to reasonably inspect the home before purchasing. It claims that such an inspection would have revealed the potential of the disastrous defect of workmanship this house had. There is no evidence of such a claim. Plaintiffs bought the home in 1986. At that time, there were a few cracks in the stucco of a normal nature. Not until 1987 did separation of the stucco from the exterior sheathing begin to manifest itself in chunks falling off and bulging. Its rapid acceleration since indicates that only from 1987 would a reasonable purchaser have been put on any kind of notice that a disastrous problem lay hidden beneath the exterior stucco and paint.

Judgment was entered in plaintiff's favor in the sum of $16,500.00 as damages, together with attorneys' fees in the sum of $3,180.00, and costs of $216.13. Defendant timely appealed.

*Reasonable Inspection of the Structure*

■ Implied warranties of workmanship and habitability for original owners of residential structures were first recognized by this court in *Columbia Western Corp. v. Vela,* 122 Ariz. 28, 592 P.2d 1294 (App. 1979), and were extended to subsequent

purchasers by our supreme court in *Richards v. Powercraft Homes, Inc.*, 139 Ariz. 242, 678 P.2d 427 (1984). These warranties are limited, however, to latent defects that would not have been discoverable had a "reasonable inspection" been made prior to the purchase. *Id.* at 245, 678 P.2d at 430.

Here, defendant contends that a reasonable inspection did not occur prior to purchase because the defect would have been easily discoverable by a trained person, engaged in the business of home inspection. Indeed, Rushing testified that such an inspection by a trained person, had that person measured the depth of material and analyzed the mixture, would have indicated "rather quickly" the existence of the defects in the stucco installation.

However, Rushing also testified that a lay person would not "key in on any of these problems until they started to appear the way they are now," and plaintiff testified he made a lay person's inspection of the home prior to purchase. The trial court found that, at the time of the purchase, "there [were] few cracks in the stucco of a normal nature," and "only from 1987 would a reasonable purchaser have been put on any kind of notice that a disastrous problem lay hidden beneath the exterior stucco and paint."

■ We disagree with defendant's contention that a "reasonable inspection" must include, as one of its components, an inspection by an expert or professional home inspection service to scrutinize the house for internal defects prior to purchase. Rather, under the policies stated in *Columbia* and *Powercraft*, an implied warranty should be voided for lack of a "reasonable inspection" only if the defect could have been discovered during an inspection made by the average purchaser, not an expert.

■ The rule of *caveat emptor* applies generally to the sale of real estate. *See generally* Comment, *Caveat Emptor in Sales of Real Property—Time for a Reappraisal*, 10 Ariz.L.Rev. 484 (1968). However, the general rule is not applied to the construction of residential houses because of the public policy favoring the protection of innocent home purchasers and the ac-

countability of home builders. *See Nastri v. Wood Bros. Homes, Inc.*, 142 Ariz. 439, 442, 690 P.2d 158, 161 (App.1984). In *Columbia*, we recognized the disparity between the expertise of the home builder and the average home purchaser:

> Many firms and persons ... hold themselves out as skilled in home construction and are in the business of building and selling to individual owners.... Building construction by modern methods is complex and intertwined with governmental codes and regulations. The ordinary home buyer is not in a position, by skill or training, to discover defects lurking in the plumbing, the electrical wiring, the structure itself, all of which is usually covered up and not open for inspection.

122 Ariz. at 32, 592 P.2d at 1298, quoting *Tavares v. Horstman*, 542 P.2d 1275, 1279 (Wyo.1975). The same recognition was extended to subsequent purchasers in *Powercraft*:

> Home builders should anticipate that the houses they construct will eventually, and perhaps frequently, change ownership. The effect of latent defects will be just as catastrophic on a subsequent owner as on an original buyer and the builder will be just as unable to justify improper or substandard work. Because the builder-vendor is in a better position than a subsequent owner to prevent occurrence of major problems, the costs of poor workmanship should be his to bear.

139 Ariz. at 245, 678 P.2d at 430.

Admittedly, the "reasonable inspection" requirement for subsequent purchasers is necessary to avoid a windfall to the purchaser who negotiates a reduction in the purchase price based upon defects and then subsequently seeks damages from the builder for the same defects. However, a requirement that the "reasonable inspection" made prior to purchase be done by an expert rather than by the purchaser would negate the policy considerations for recognizing an implied warranty in the first place. In declining to adopt such a rule, we agree with the observations of the Colorado Supreme Court:

An experienced builder who has erected and sold many houses is in a far better position to determine the structural condition of a house than most buyers. Even if a buyer is sufficiently knowledgeable to evaluate a home's condition, he rarely has access to make any inspection of the underlying structural work, as distinguished from the merely cosmetic features.

*Duncan v. Schuster–Graham Homes, Inc.,* 194 Colo. 441, 578 P.2d 637, 638–39 (1978). *See also Hermes v. Staiano,* 181 N.J.Super. 424, 437 A.2d 925 (1981) (a residential structure contains numerous concealed systems that are not subject to ready inspection by any purchasers).

■ The evidence in this case clearly established that the average purchaser would not have discovered the defect upon reasonable inspection and that plaintiff made such an inspection. We thus find no error in the trial court's finding that plaintiff met the reasonable inspection requirement necessary to an implied warranty of habitability or proper workmanship.

*Reasonable Time of Implied Warranty*

Defendant also contends that the trial court's extension of an implied warranty more than twelve years after completion of construction is unreasonable, and fails to meet the limitations on the warranty set forth by the supreme court in *Powercraft* and followed by Division Two of this court in *Sheibels v. Estes Homes,* 161 Ariz. 403, 778 P.2d 1299 (App.1989).[1]

In *Powercraft,* the supreme court adopted the standard of reasonableness first articulated by the Indiana Supreme Court in *Barnes v. Mac Brown & Co.,* 264 Ind. 227, 342 N.E.2d 619 (1976):

The standard to be applied in determining whether or not there has been a breach of warranty is one of reasonableness in light of surrounding circumstances. The age of a home, its maintenance, the use to which it has been put, are but a few factors entering into this factual determination at trial.

*Powercraft,* 139 Ariz. at 245, 678 P.2d at 430, quoting *Barnes,* 342 N.E.2d at 621.

In *Powercraft,* the subsequent purchasers discovered several structural defects up to four years after construction of the house and up to one year after the purchase. *See* 139 Ariz. 264, 678 P.2d 449 (App.1983), *approved in part, vacated in part,* 139 Ariz. 242, 678 P.2d 427 (1984). In *Barnes,* the subsequent purchaser discovered large cracks around the basement walls seven years after construction and three years after the purchase. Neither case involved a time period between completion of construction and manifestation of the defect as lengthy as the twelve to thirteen year period involved in the instant case.

In *Sheibels,* Division Two held that an implied warranty for protection against termites did not, as a matter of law, extend to subsequent purchasers fourteen years after the home was built because the expert

1. Defendant also points out that the legislature has recently enacted a statute of limitations regarding claims for breach of implied warranties of habitability for latent defects, which, had it been in effect at the time this suit was filed, would have barred plaintiff's claim. *See* A.R.S. § 12–552(B), effective Sept. 15, 1989 (barring claims discovered more than eight years after substantial completion of an improvement to real property). Although this statute cannot apply retroactively to bar plaintiff's suit, *see* A.R.S. § 12–505(C), defendant urges us to adopt the eight-to-nine year time frame expressed in that enactment as a standard of "reasonable time" in which to discover a defect and bring suit against the builder.

Defendant's argument confuses two issues. The issue of how long the warranty is in effect is *separate* from the issue of how long the purchaser has to sue once the defect is discovered. Prior to the enactment of A.R.S. § 12–552, an

action for breach of implied warranty in the construction of a new home by the original purchaser was governed by the six-year statute of limitations for actions for debt founded on a contract in writing, A.R.S. § 12–548. *Woodward v. Chirco Constr. Co.,* 141 Ariz. 520, 687 P.2d 1275 (App.1984). Under the policies of *Powercraft,* we see no reason why the same statute of limitations would not have applied to subsequent purchasers as well. The purchaser's cause of action arose, however, at the time that builder abandoned all efforts to remedy the defect and disclaimed all responsibility; at that moment the statute of limitations began to run. *See Beaudry Motor Co. v. New Pueblo Constructors, Inc.,* 128 Ariz. 481, 626 P.2d 1113 (App. 1981). This assumed, however, that the warranty was still in effect at the time of the breach, thus giving rise to any liability, a separate issue from whether the statute of limitations had run.

testimony established that termite treatment is not expected to last longer than five years. 161 Ariz. at 406, 778 P.2d at 1302. The court applied the *Barnes* factors to determine the duration of an implied warranty, and concluded that, among other things, a court should consider "the *expected efficient life* of a properly installed" component of the house. *Id.* at 405, 778 P.2d at 1301, quoting *Wagner Constr. Co. v. Noonan*, 403 N.E.2d 1144, 1149 (Ind.App.1980) (emphasis added). The *Sheibels* court also noted the rule adopted by the Wyoming Supreme Court that the warranty extends to subsequent purchasers for a "reasonable length of time." 161 Ariz. at 405, 778 P.2d at 1301, quoting *Moxley v. Laramie Builders, Inc.*, 600 P.2d 733, 736 (Wyo.1979).

Other courts have adopted variations on this common theme that the duration of the warranty is to be determined by the reasonable life expectancy of the particular defective component of the house. The Wyoming Supreme Court has stated:

> Some question exists as to what should be the period of implied warranty. We appreciate that different parts of construction may have a different expected life, such as a foundation compared to a roof. We have no problem in the present case because the septic tank system failed *before a minimum life expectancy had been reached.... [T]he duration of liability is determined by the standard of reasonableness.*

*Tavares*, 542 P.2d at 1282 (emphasis added). *See also Moxley*, 600 P.2d at 735 (length of implied warranty for electrical wiring enclosed within framework of house not exceeded because component *"is expected to last and remain safe"* beyond period disclosed in complaint) (emphasis added); *Terlinde v. Neely*, 275 S.C. 395, 271 S.E.2d 768, 769 (1980) ("The length of time for latent defects to surface, so as to place subsequent purchasers on equal footing should be controlled by the standard of reasonableness and not an arbitrary time limit created by the Court").

■ Thus, the duration that an implied warranty will exist is a factual determination that will depend, in part, on the life expectancy of the questioned component in a non-defective condition. In making this determination, a fact finder need not decide the outside limits of that life expectancy, but only whether liability is reasonable at the point of the breach under the particular facts of the case. *See Moxley*, 600 P.2d at 735 ("It is true that there is a point in time beyond which the implied warranty will expire based on a standard of reasonableness as expressed in *Tavares*. However, we can only conclude that point is not exceeded under the facts here presented").

■ In this case, the trial court heard expert testimony that a stucco exterior has a normal life expectancy in the Arizona desert of thirty to fifty years, and defendant conceded that the stucco process applied to plaintiff's house could be reasonably expected to last more than the twelve years that it did. The evidence also established that the damage from the defective stucco application was gradual and progressive, occurring over a period of at least ten years, and was not discoverable by reasonable inspection until it actually was discovered. Under these circumstances, we find no error in the trial court's conclusion that, based on the expected life of the defective component of the house, twelve years was not an unreasonable period for an implied warranty of habitability and workmanship to exist.

Based on the foregoing, we affirm the judgment of the trial court.

### Attorneys' Fees

Our disposition on the merits renders defendant's appeal from the award of attorneys' fees moot. Plaintiff has requested an award of attorneys' fees on appeal, pursuant to A.R.S. § 12–34.01, and has submitted an application for fees of $1,230.00 and costs of $119.85. Plaintiff is awarded his fees and costs for this appeal.

GERBER and FIDEL, JJ., concur.