2006 VT 125

### Joanne and Jerry HEATH v. Warren C. PALMER, Saxon Oaks Company, WCP Construction Company, and Palmer Real Estate and Development Company

[915 A.2d 1290]

No. 05-142

¶ 1. November 20, 2006. Plaintiffs Joanne and Jerry Heath filed a three-count complaint against defendant Warren Palmer and several corporate entities owned by Palmer (defendants) alleging consumer fraud, contractor's negligence, and breach of contract and warranty in the construction and sale of a new home located in the Town of Jericho. The court rejected plaintiffs' negligence and fraud claims but entered judgment for plaintiffs on their warranty claim and awarded damages of $4,089.74. Plaintiffs appeal, contending that the court erred by: (1) limiting defendants' liability to construction defects reported within one year of the closing; (2) awarding lower damages for certain defects than the evidence warranted; (3) rejecting plaintiffs' consumer fraud and negligence claims; (4) refusing to hold defendant Palmer individually liable; and (5) denying plaintiffs' request for prejudgment interest. As explained below, we affirm the court's rulings in most respects, but reverse and remand for further findings and conclusions with regard to the award for breach of warranty.

¶ 2. The facts may be summarized as follows. Plaintiffs entered into a "buy-build" contract with defendants for the construction and purchase of a new home. The total price of the home was $261,302. The closing occurred in October 1999. Plaintiffs received a copy of defendants' "Service Repair and Warranty Policy" at the closing. The policy called for plaintiffs to inspect the property thirty days, ninety days, and twelve months after the closing, to complete and return inspection reports, and to provide access for defendants to conduct service calls in response to the inspection reports. The policy represented that defendants offered "quality construction with exceptional value" and set forth a "limited warranty on the construction of every home we build" with the exception of components such as furnace, cabinets, and light fixtures that were covered by their own manufacturers' warranties.

¶ 3. Plaintiffs submitted a thirty-day inspection report on a form provided by defendants detailing a number of alleged construction defects throughout the house. Plaintiffs created and submitted their own checklist for the ninety-day and twelve-month inspections setting

forth an extensive list of additional defects. Plaintiffs sent an additional defects list in June 2002, followed by a detailed structural engineering report listing the alleged defects room-by-room with cost estimates for each item of repair. The total exceeded $30,000.

¶ 4. Dissatisfied with defendants' response, plaintiffs filed suit, alleging construction negligence, consumer fraud, and breach of contract and warranty. The parties agreed to submit the matter to a special master, but reserved the right to object to the court's acceptance of the report. V.R.C.P. 53. Following a hearing, the master submitted a written report to the court, setting forth his findings and conclusions. The master concluded that the warranty was "an effective limitation of liability" precluding plaintiffs from recovering for any defects not reported within one year of the closing or otherwise acknowledged as deficiencies by defendants. As for recoverable damages, the master noted that the only evidence of remedial costs was the engineering report submitted by plaintiffs, and awarded damages for nine separate repair items totaling $4,089.74. The master explained the discrepancy between this figure and that submitted by plaintiffs as follows:

> Some of [plaintiffs'] claims are denied because notice was not given during the Warranty period; some are denied because, although Plaintiffs are not satisfied with the result, the work complie[d] with contract specifications (e.g. the driveway), is not negligent (e.g. basement water) or of an unworkmanlike quality (e.g. garage wall); and some are denied because they are covered by a manufacturer's warranty (e.g. laminate floor), and are therefore excluded by the Warranty.

¶ 5. Plaintiffs objected to the master's report on several grounds, but the trial court rejected plaintiffs' objections and issued a written decision adopting the report in its entirety. As noted, the policy provided generally that the builder "[stood] behind the construction of each and every home" and sought "to provide quality assurance" and represented that the builder offered "quality construction" and a "limited warranty on the construction of every home we build." The court concluded that the policy was not "an express assurance of any particular level of quality," but rather "a memorialization of the implied warranty of good workmanship" stating a process and schedule for reporting discovered defects to be repaired.[1] The court observed, correctly, that the implied warranty applied to defects latent at closing. *Meadowbrook Condo. Ass'n v. S. Burlington Realty Corp.*, 152 Vt. 16, 19, 565 A.2d 238, 240 (1989) (noting that "the law will recognize an implied warranty only with respect to defects that were latent at the time of purchase"). The court further concluded, in agreement with the master, that the policy limited defendants' liability for all latent defects to those defects reported within one year of the closing. The court affirmed the master's damage award for breach of warranty, rejected plaintiffs' negligence and consumer fraud claims, declined to hold defendant Palmer personally liable, and denied plaintiffs' request for prejudgment interest. This appeal followed.

## I.

¶ 6. Plaintiffs first contend that the court erred in construing the warranty

---

[1] Plaintiffs have not appealed the finding that the policy offered no express warranty of quality, and we therefore consider the issue to have been waived.

policy to limit defendants' liability to defects reported within one year of the closing. The general rule is that exclusions or modifications of warranties must be conspicuous and unambiguous. See 9A V.S.A. § 2-316(2) (exclusions or modifications of implied warranty of merchantability and fitness in sale of goods must be conspicuous and in writing); *Bolkum v. Staab*, 133 Vt. 467, 469-70, 346 A.2d 210, 211 (1975) (applying statutory provision relating to implied warranty in sale of goods to structural defects in home). We are not persuaded that the policy placed a clear and unambiguous twelve-month limit on defendants' liability for latent defects under the implied warranties of habitability and good workmanship. The policy terms contained no express exclusion of either implied warranty, and contained no clear and unambiguous provision — agreed to by plaintiffs — waiving defendants' liability for such defects not reported within one year of closing. See 14 R. Powell et al., Powell on Real Property § 84A.06[8], at 84A-62 (1994) (noting general rule that disclaimer of implied warranty for builder of home may be upheld if it is specific, conspicuous, and mutually agreed upon by all parties); *Hoagland v. Celebrity Homes, Inc.*, 572 P.2d 493, 494 (Colo. Ct. App. 1977) (limitation in letter of warranty did not apply to implied warranties because the letter "contain[ed] no words of limitation that would indicate the intention of the builder to abrogate or limit his common law implied warranties").

¶ 7. Absent such a provision, the general rule is that the duration of the implied warranty of habitability and good workmanship is determined by a "standard of reasonableness." *Rothberg v. Olenik*, 128 Vt. 295, 304, 262 A.2d 461, 467 (1970); accord *Sheibels v. Estes Homes*, 778 P.2d 1299, 1301 (Ariz. Ct. App. 1989) (observing that in determining duration of implied warranty of fitness "standard to be applied to each factual situation is reasonableness"); *Wagner Constr. Co v. Noonan*, 403 N.E.2d 1144, 1148 (Ind. Ct. App. 1980) ("The duration of the implied warranty of fitness for habitation is determined by the standard of reasonableness."); *Lempke v. Dagenais*, 547 A.2d 290, 297 (N.H. 1988) ("The implied warranty of workmanlike quality for latent defects is limited to a reasonable period of time."); *Terlinde v. Neely*, 271 S.E.2d 768, 769 (S.C. 1980) (stating that "length of time for latent defects to surface . . . should be controlled by the standard of reasonableness"); *Moxley v. Laramie Builders, Inc.*, 600 P.2d 733, 736 (Wyo. 1979) (concluding that builder's implied warranty of fitness extends for a *"reasonable* length of time").

¶ 8. In determining what is reasonable under the circumstances, courts have looked to such factors as the age of the home and its maintenance history, the nature of the defect and the extent to which it is discoverable through reasonable inspection, and the parties' expectations as to the reasonable durability of the defective structure. See, e.g., *Hershey v. Rich Rosen Constr. Co.*, 817 P.2d 55, 61 (Ariz. Ct. App. 1991) ("[T]he duration that an implied warranty will exist is a factual determination that will depend, in part, on the life expectancy of the questioned component in a non-defective condition."); *Wagner Constr. Co.*, 403 N.E.2d at 1148 (finding that five years was reasonable duration of implied warranty for latent defect in residential septic system given "common knowledge that the expected efficient life of a properly installed septic system in a newly constructed dwelling is greater than five years"); see generally F. Powell, *Builder-Vendor Liability for Environmental Contamination in the Sale of New Residential Property*, 58 Tenn. L. Rev. 231, 238 (1991) ("Most courts hold that the

[implied] warranty [of habitability or good workmanship] lasts for a 'reasonable time,' with the duration of the warranty determined by the nature of the defect and the particular circumstances of the case.").

¶ 9. In attempting to apply the foregoing warranty principles to the facts here, however, we are confronted by a dearth of specific findings in either the master's report or the trial court's decision. The master found, and the record shows, that plaintiffs submitted several inspection reports within the one-year reporting period setting forth an extensive list of alleged defects. Plaintiffs also submitted an additional report in October 2002, about three years after the closing, prepared by a consulting engineer and containing specific cost estimates for previously reported defects as well as additional problems. The master indicated that plaintiffs raised still more deficiencies, such as the "mis-alignment of the dining room doors," for the first time at the hearing in August 2004.

¶ 10. As noted, the master concluded, and the court agreed, that plaintiffs waived their right to recover for defects not reported to defendants during the one-year period, but the court made no specific findings as to why, or even whether, one year constituted a reasonable period under the law discussed above. Nor did the master or the court make clear and specific findings as to which, if any, of the reported defects could have been reasonably discovered prior to closing, and which were latent subsequent to closing. See *Meadowbrook*, 152 Vt. at 19, 565 A.2d at 240 (implied warranties of merchantability and workmanship apply to defects that were latent at time of purchase). "The trial court has a fundamental duty to make all findings necessary to support its conclusions, resolve the issues before it, and provide an adequate basis for appellate review."

*Sec'y, Vt. Agency of Natural Res. v. Irish*, 169 Vt. 407, 419, 738 A.2d 571, 580 (1999). Absent the requisite findings and analysis discussed above, we cannot properly resolve plaintiffs' claim that the court erroneously restricted their recovery to a few of the many defects which they reported to defendants. Accordingly, we conclude that the case must be remanded for additional findings and conclusions as discussed above.

II.

¶ 11. Plaintiffs also claim that the damage award for four specific construction defects was not adequately supported by the evidence or findings. Again, we are constrained to agree. Plaintiffs adduced evidence that repairs for a myriad of reported drywall problems would cost approximately $7,225. Plaintiffs also introduced evidence that defects in the master bathroom would cost $2,107; that certain defects in the children's bathroom would cost $374; and that certain defects in the stairway would cost $576. Defendants submitted no competing estimates. The master's report recommended an award of $1,628.64 for drywall deficiencies, but contained no findings identifying the source of this figure or explaining the discrepancy between this amount and plaintiffs' evidence. Similarly, the master's report recommended an award of $189.93 to caulk and grout the master bath, $62.85 to install a vanity filer strip in the children's bathroom, and $345.75 to refinish the stairway, but again set forth no findings or explanation for excluding other specifically identified defects in these areas.[2] In adopting the master's

_____
[2] As noted, the master indicated that "some" claims were denied as outside the one-year reporting period, "some" were denied because they complied with contract specifications or were not of an

recommendations, the trial court addressed the disparity as follows:

> Based upon the court's reading of the transcript, the evidence was not clear that all drywall problems that the contractor included in the estimate were violations of the warranty of good workmanship. For example, some drywall repairs that were made by Builders to Buyers' satisfaction have since become problems again. Some damage could have occurred in the year and a half of occupancy. Similar issues arise with respect to the other damage assessments that Buyer[s] object to. The master's determination of damages was not clearly erroneous.

¶ 12. The court does not explain, however, why drywall problems that were repaired once and "have since become problems again" do not violate the warranty of good workmanship. Nor does the possibility that some drywall damage "could have occurred in the year and half of occupancy" represent a clear finding that the damages were caused by plaintiffs rather than by the builder, and therefore were not recoverable. Nor does the court identify the source of the $1,628.64 drywall-repair figure. Nor, finally, does the court's assertion that "similar issues arise with respect to the other damage assessments that Buyers object to" adequately explain the basis for excluding specific repairs to the other

---

unworkmanlike quality, and "some" were denied because they were covered by manufacturers' warranties, but apart from a few examples the master made no findings specifically identifying which defects fell within which categories.

areas in question. Accordingly, we conclude that the case must be remanded for additional findings addressed to these issues as well.

### III.

¶ 13. Plaintiffs raise a variety of additional claims, none of which is persuasive. First, they contend that the court erred in rejecting their claim under the Consumer Fraud Act, 9 V.S.A. §§ 2451-2463 (Act). The Act makes unlawful "unfair or deceptive acts or practices in commerce," *id.* § 2453(a), and provides a private right of action for a "consumer who contracts for goods or services in reliance upon false or fraudulent representations or practices prohibited by section 2453." *Id.* § 2461(b). Plaintiffs' consumer fraud claim is premised on defendants' representation that they "take pride in offering cost efficient, quality construction with exceptional value." Plaintiff Joanne Heath also testified that defendant Palmer personally vouched for the value and quality of the construction.

¶ 14. We have distinguished statements of fact from statements of opinion in the consumer-fraud context, holding that misrepresentations of the former may constitute fraud while misrepresentations of the latter cannot. *Winey v. William E. Dailey, Inc.*, 161 Vt. 129, 133, 636 A.2d 744, 747 (1993). Defendants' representations here of "quality construction" and "exceptional value" unquestionably fall within the category of opinion as subjective evaluations of workmanship rather than objectively verifiable statements of fact. See, e.g., *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 846 (Ill. 2005) (ruling that advertisement of "quality replacement parts" was mere commercial puffery, "the truth or falsity of which cannot be precisely determined" and was therefore not actionable under deceptive practices act); *McGraw v. Loyola Ford, Inc.*,

723 A.2d 502, 512 (Md. Ct. Spec. App. 1999) (holding that representation of product as "most outstanding value" was expression of opinion not actionable under consumer protection act); *Tietsworth v. Harley-Davidson, Inc.*, 677 N.W.2d 233, 245-46 (Wis. 2004) (holding that advertisement of product as "premium quality" was "mere commercial puffery" incapable of "being substantiated or refuted" and therefore not actionable under state deceptive practices act (quotations omitted)). Accordingly, we conclude that the trial court properly dismissed plaintiffs' consumer fraud claim.

¶ 15. Next plaintiffs contend that the court erred in rejecting their claim against defendants Palmer and WCP Construction for "contractor's negligence." The trial court properly rejected the claim, observing that plaintiffs' remedy for the purely economic losses resulting from the reduced value or costs of repairs of the construction defects sounded in contract rather than tort. See *Gus' Catering, Inc. v. Menusoft Sys.*, 171 Vt. 556, 558-59, 762 A.2d 804, 807 (2000) (mem.) (reaffirming principle that negligence law does not generally recognize duty to exercise reasonable care to avoid economic loss, and defining economic loss to include "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits") (internal quotation omitted); *Paquette v. Deere & Co.*, 168 Vt. 258, 263, 719 A.2d 410, 414 (1998) (rejecting tort claim for allegedly defective motor home and holding that claim for purely economic damages for reduced value of home was actionable in warranty).

¶ 16. The limitation to contract remedies in this context is the general rule in most other jurisdictions, as well. See, e.g., *Nastri v. Wood Bros. Homes, Inc.*, 690 P.2d 158, 163-64 (Ariz. Ct. App. 1984) (upholding dismissal of plaintiffs' negligence claim for purely economic losses resulting from latent construction defects in their home, while reversing dismissal of claim for breach of implied warranty of workmanship); *Tusch Enters. v. Coffin*, 740 P.2d 1022, 1025-26, 1034 (Idaho 1987) (economic loss resulting from costs to replace or repair structural defects to residences were not recoverable under negligent construction theory, but would support claim for breach of implied warranty of habitability); *Redarowicz v. Ohlendorf*, 441 N.E.2d 324, 326-27 (Ill. 1982) (rejecting tort claim for faulty construction of home, holding that economic losses from reduced value or repair costs to home were actionable under breach of contract and warranty theories rather than negligent construction); *Prendiville v. Contemporary Homes, Inc.*, 83 P.3d 1257, 1263 (Kan. Ct. App. 2004) (holding that economic loss doctrine barred negligence claim against residential contractor for construction defects where rights were governed by express and implied warranties); *Calloway v. City of Reno*, 993 P.2d 1259, 1270 (Nev. 2000) (concluding that purely economic losses from structural defects in residential townhouses were not recoverable under negligence theory), *overruled on other grounds by Olson v. Richard*, 89 P.3d 31 (Nev. 2004); *Lempke*, 547 A.2d at 291 (reaffirming principle precluding tort recovery for economic losses from construction defects in home); *Maack v. Res. Design & Constr., Inc.*, 875 P.2d 570, 581 (Utah Ct. App. 1994) (economic loss rule barred plaintiffs' action for negligent construction to recover for costs incurred from defects in home); see generally S. Barrett, *Recovery of Economic Loss in Tort for Construction Defects: A Critical Analysis*, 40 S.C. L. Rev. 891, 897 (1989) (discussing history and rationale of economic-loss rule for construction defects and noting "[t]he majority view ... denies recovery because any damage to the product itself is a commercial expectancy

interest protected by contract law, rather than tort law"). Accordingly, the trial court properly rejected plaintiffs' negligence claim.

¶ 17. Plaintiffs further contend the court erred in rejecting their attempt to hold defendant Warren Palmer, the sole shareholder of the defendant business entities, personally liable under a theory of corporate "alter-ego." The court found that plaintiffs failed to demonstrate that the corporate form was being used to perpetrate a fraud or injustice, and plaintiffs ·have cited no evidence or law to undermine this finding. See *Agway, Inc. v. Brooks*, 173 Vt. 259, 262, 790 A.2d 438, 441 (2001) (observing that court may pierce corporate veil only where it is necessary to prevent fraud or injustice, and that the court's findings in this regard will be overturned only where there is no credible evidence to support them).

¶ 18. Finally, plaintiffs claim that the court erred in denying their request for prejudgment interest. We have held that an award of prejudgment interest is mandatory where damages are liquidated or readily ascertainable and otherwise discretionary where the court determines that it is necessary to make the plaintiff whole or avoid an injustice. *Estate of Fleming v. Nicholson*, 168 Vt. 495, 501, 724 A.2d 1026, 1030 (1998). Although plaintiffs here assert that they were unjustly deprived of the "full fruits" of the value they paid for their home, they have not shown that, in rejecting their request, "the court entirely withheld its discretion or that it exercised discretion for clearly untenable reasons or to a clearly untenable extent." *Remes v. Nordic Group, Inc.*, 169 Vt. 37, 39-40, 726 A.2d 77, 79 (1999) (quotations omitted) (rejecting claim that court abused its broad discretion in awarding prejudgment interest). Accordingly, we discern no basis to disturb the court's ruling.

*Reversed and remanded for further proceedings consistent with the views expressed herein.*

Motion for reargument denied December 4, 2006.