12 Cal.3d 374 (1974)
525 P.2d 88
115 Cal. Rptr. 648
MAURICE A. POLLARD et al., Plaintiffs and Appellants,
v.
SAXE & YOLLES DEVELOPMENT COMPANY et al., Defendants and Respondents.
Docket No. S.F. 23029.
Supreme Court of California. In Bank.
August 20, 1974.
*376 COUNSEL
Raymond H. Levy and Paul E. Rabin for Plaintiffs and Appellants.
William J. Bush and Hanson, Bridgett, Marcus & Jenkins for Defendants and Respondents.
OPINION
CLARK, J.
Plaintiffs appeal from judgment denying recovery for structural defects in apartment buildings purchased from defendants.
This case presents the issue whether the doctrine of implied warranties of quality and fitness  now applicable to the sale of goods and to some contracts for labor and material  should also apply to the sale of newly constructed real property.
In 1960 and 1961, defendants entered written agreements with a general contractor for the construction of five apartment buildings in San Jose.[1] As each building was completed, defendants took possession, renting the units, and ultimately conveying the property to plaintiffs. Defendants represented themselves as developers  not as contractors.
*377 Plaintiffs took possession on 1 April 1963, and became aware of certain defects in the buildings at that time. The ceiling in one apartment was buckling, the sliding glass doors in two were sticking, and water remained on some of the patio decks after a rainfall, all resulting in the loss of rental in two apartments.
It was later determined that the defects resulted from the contractor's having removed center posts and installed undersized headers or beams inadequate to support the floor loads of the second-story patio decks. Concrete was substituted  at defendants' order  for lighter-weight magnesite called for in the plans, increasing the stress.
Plaintiffs did not notify defendants of the defects until January 1967. Suit was commenced on 3 February 1967, more than three years but less than four years after both actual and constructive notice of the damage to their property.
The trial court held that the implied warranties of quality and fitness of purpose do not attach to the sale of real property, and that in any event, plaintiffs would be barred by their failure to give timely notice of breach of warranty.[2]

IMPLIED WARRANTY
Historically, the laws governing sales of real property have developed along lines different from those governing sales of commercial goods. In the normal sale of land and buildings, courts have traditionally applied the doctrine of caveat emptor, with the buyer assuming the risk on quality  absent express warranty, fraud, or misrepresentation. (Gustafson v. Dunman, Inc. (1962) 204 Cal. App.2d 10, 13 [22 Cal. Rptr. 161]; Murphy v. Sheftel (1932) 121 Cal. App. 533, 539 [9 P.2d 568].) In contrast, in the sale or furnishing of tangible chattels, warranties of quality and fitness have been implied (Gagne v. Bertran (1954) 43 Cal.2d 481 [275 P.2d 15]), and in California statutes dealing with such warranties now govern the sale of goods (Cal.U.Com.Code, § 2105).
Gradually, many of the principles governing chattel transactions have been adopted in the law of real property, and a number of exceptions *378 have developed to the rule imposing the risk of faulty construction on the buyer. Departures from the older rule have occurred in the areas of both tort and contract liability.
In Dow v. Holly Manufacturing Co. (1958) 49 Cal.2d 720, 724-725 [321 P.2d 736], this court, quoting from Prosser on Torts (2d ed. 1955) pages 517-519, recognized that several recent decisions abrogating the rule of nonliability for negligently caused personal injuries "have placed building contractors on the same footing as sellers of goods, and have held them to the general standard of reasonable care for the protection of anyone who may foreseeably be endangered by the negligence even after acceptance of the work."
(1) The contractor's liability for negligence for faulty construction has not been limited to personal injuries but now extends to diminution in the value of the construction (Sabella v. Wisler (1963) 59 Cal.2d 21, 29 [27 Cal. Rptr. 689, 377 P.2d 889]; Stewart v. Cox (1961) 55 Cal.2d 857, 862-863 [13 Cal. Rptr. 521, 362 P.2d 345]; cf. Connor v. Great Western Sav. & Loan Assn. (1968) 69 Cal.2d 850, 869 [73 Cal. Rptr. 369, 447 P.2d 609, 39 A.L.R.3d 224]), and the strict liability doctrine developed with respect to chattels has been applied to defective construction in two cases (Avner v. Longridge Estates (1969) 272 Cal. App.2d 607, 609-615 [77 Cal. Rptr. 633]; Kriegler v. Eichler Homes, Inc. (1969) 269 Cal. App.2d 224, 227 [74 Cal. Rptr. 749]).
Exceptions to the rule excusing building contractors have also been recognized on the basis of implied warranties. In Gagne v. Bertran, supra, 43 Cal.2d 481, 486, this court recognized that in appropriate circumstances warranty liability extends beyond the sale of tangible chattels; and Aced v. Hobbs-Sesack Plumbing Co. (1961) 55 Cal.2d 573, 580-583 [12 Cal. Rptr. 257, 360 P.2d 897], rejecting the view that implied warranties were limited to contracts within the sales act, held that an implied warranty of merchantability arises from a contract to build a portion of a building because the contract is one for material and labor. (55 Cal.2d at pp. 582-583.)
(2) Likewise, a contract to build an entire building is essentially a contract for material and labor, and there is an implied warranty protecting the owner from defective construction. (See Green v. Superior Court (1974) 10 Cal.3d 616, 626 [111 Cal. Rptr. 704, 517 P.2d 1168]; Kuitems v. Covell (1951) 104 Cal. App.2d 482, 485 [231 P.2d 552]; Roscoe Moss Co. v. Jenkins (1942) 55 Cal. App.2d 369, 376 [130 P.2d 477].) Clearly, it would be anomalous to imply a warranty of quality when *379 construction is pursuant to a contract with the owner  but fail to recognize a similar warranty when the sale follows completion of construction.
Recent decisions in other jurisdictions conclude an implied warranty of quality attaches to the sale of new construction.[3] Further, this result has been urged by many commentators.[4]
(3) The doctrine of implied warranty in a sales contract is based on the actual and presumed knowledge of the seller, reliance on the seller's skill or judgment, and the ordinary expectations of the parties. (8 Williston on Contracts, supra, pp. 541, 549-550.)
In the setting of the marketplace, the builder or seller of new construction  not unlike the manufacturer or merchandiser of personalty  makes implied representations, ordinarily indispensable to the sale, that the builder has used reasonable skill and judgment in constructing the building. On the other hand, the purchaser does not usually possess the knowledge of the builder and is unable to fully examine a completed house and its components without disturbing the finished product. Further, unlike the purchaser of an older building, he has no opportunity to observe how the building has withstood the passage of time. Thus he generally relies on those in a position to know the quality of the work to be sold, and his reliance is surely evident to the construction industry.
*380 (4) Therefore, we conclude builders and sellers of new construction should be held to what is impliedly represented  that the completed structure was designed and constructed in a reasonably workmanlike manner.[5]

NOTICE OF BREACH OF WARRANTY
(5) Although the statute requiring notice within a reasonable time (Cal.U.Com.Code, § 2607, subd. (3)) is applicable to sales of goods (see Cal.U.Com.Code, § 2102 et seq.), a similar requirement should apply here. In treating common law warranties, it has been recognized that statutory standards should be utilized where appropriate. (Greenman v. Yuba Power Products, Inc. (1963) 59 Cal.2d 57, 61 [27 Cal. Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049]; Franck v. J.J. Sugarman-Rudolph Co. (1952) 40 Cal.2d 81, 88 [251 P.2d 949].) The requirement of notice of breach is based on a sound commercial rule designed to allow the defendant opportunity for repairing the defective item, reducing damages, avoiding defective products in the future, and negotiating settlements. The notice requirement also protects against stale claims. (E.g., Whitfield v. Jessup (1948) 31 Cal.2d 826, 829 [193 P.2d 1].) These considerations are as applicable to builders and sellers of new construction as to manufacturers and dealers of chattels.
(6) The buyer is required to give notice within a reasonable time after he discovers or should have discovered the breach of warranty. (Cal.U. Com.Code, § 2607, subd. (3); Whitfield v. Jessup, supra, 31 Cal.2d 826, 829; see Rest., Contracts (1932) § 412.) In April 1963, plaintiffs were aware the ceiling was buckling and walls were not straight in one apartment, sliding glass doors were sticking, and water was remaining on decks after rainfalls. Although possibly not aware of the causes, they knew of the defects for nearly four years before giving notice. We therefore uphold the trial court's determination that the action for breach of warranty is barred by unreasonable delay in giving notice.

COST BILL
Five days after the statutory time to file a cost bill, defendants moved for permission to file a late memorandum of costs on the ground that due *381 to the press of other matters counsel inadvertently failed to file a timely memorandum. The motion was granted. (7) In the absence of prejudice, the trial court has broad discretion in allowing relief on grounds of inadvertence from a failure to timely file a cost bill. (Reese v. Borghi (1963) 216 Cal. App.2d 324, 333-334 [30 Cal. Rptr. 868]; LeDeit v. Ehlert (1962) 205 Cal. App.2d 154, 169-170 [22 Cal. Rptr. 747].) There is no showing of prejudice, and the court did not abuse its discretion.
The judgment and the order allowing the late filing of cost bill are affirmed.
Wright, C.J., McComb, J., Mosk, J., Molinari, J.,[*] and Taylor, J.,[*] concurred.
Appellants' petition for a rehearing was denied September 19, 1974. Tobriner, J., and Sullivan, J., did not participate therein.
NOTES
[1] The facts are based on a 15-page settled statement prepared pursuant to rule 7, California Rules of Court. Plaintiffs attack the settled statement as being conclusionary. We do not have transcripts but so far as appears, the statement is accurate and the conclusionary statements objected to may reflect conclusionary testimony. On the basis of similar considerations, it has been held that the trial judge has full power over the record, and as long as he does not act arbitrarily, his action is final. (Burns v. Brown (1946) 27 Cal.2d 631 [166 P.2d 1]; St. George v. Superior Court (1949) 93 Cal. App.2d 815 [209 P.2d 823].) There is no showing he acted arbitrarily.
[2] The trial court held that causes of action based on negligence, fraud, or strict liability are barred by the statute of limitations requiring an action for injury to real property be brought within three years. (Code Civ. Proc., § 338, subd. 2.) By claiming breach of implied warranty plaintiffs attempt to invoke the four-year statute of limitations covering actions founded on an instrument in writing. (Code Civ. Proc., § 337, subd. 1.)
[3] Cochran v. Keeton (1971) 287 Ala. 439 [252 So.2d 313]; Wawak v. Stewart (1970) 247 Ark. 1093 [449 S.W.2d 922]; Carpenter v. Donohoe (1964) 154 Colo. 78 [388 P.2d 399]; Glisan v. Smolenske (1963) 153 Colo. 274 [387 P.2d 260]; Bethlahmy v. Bechtel (1966) 91 Idaho 55 [415 P.2d 698]; Hanavan v. Dye (1972) 4 Ill. App.3d 576 [281 N.E.2d 398]; Weeks v. Slavick Builders, Inc. (1970) 24 Mich. App. 621 [180 N.W.2d 503]; Schipper v. Levitt & Sons, Inc. (1965) 44 N.J. 70 [207 A.2d 314]; Vanderschrier v. Aaron (1957) 103 Ohio App. 340 [3 Ohio Ops.2d 367, 140 N.E.2d 819]; Jones v. Gatewood (Okla. 1963) 381 P.2d 158; Elderkin v. Gaster (1972) 447 Pa. 118 [288 A.2d 771]; Waggoner v. Midwestern Development, Inc. (1967) 83 S.D. 57 [154 N.W.2d 803]; Humber v. Morton (Tex. 1968) 426 S.W.2d 554 [25 A.L.R.3d 372]; Rothberg v. Olenik (1970) 128 Vt. 295 [262 A.2d 461]; House v. Thornton (1969) 76 Wn.2d 428 [457 P.2d 199]; Hoye v. Century Builders, Inc. (1958) 52 Wn.2d 830 [329 P.2d 474].
[4] Bearman, Caveat Emptor in Sales of Realty  Recent Assaults Upon the Rule (1961) 14 Vand.L.Rev. 541; Dunham, Vendor's Obligation as to Fitness of Land for a Particular Purpose (1952) 37 Minn.L.Rev. 108; Haskell, The Case for an Implied Warranty of Quality in Sales of Real Property (1965) 53 Geo.L.J. 633; Roberts, The Case of the Unwary Home Buyer: The Housing Merchant Did It (1967) 52 Cornell L.Q. 835; Williston, Contracts (3d ed. 1963) § 926A; Note, Implied Warranty of Fitness for Habitation in Sale of Residential Dwellings (1966) 43 Denver L.Rev. 379; (1968) 10 Ariz.L.Rev. 484; (1965) 1 Cal.Western L.Rev. 110; (1965) 44 N.C.L.Rev. 236; (1965) 26 U.Pitt.L.Rev. 862; (1968) 71 W. Va. L.Rev. 87; see also Annot., 25 A.L.R.3d 383, 390 et seq.
[5] Civil Code section 1113 does not require a different result. The section merely specifies and limits the warranties implied from the use of the word "grant" in a conveyance; the code section deals with warranties of title not of quality. (Cf. Humber v. Morton, supra, 426 S.W.2d 554, 555-556 (discussing a similar Texas code section).)
[*] Assigned by the Chairman of the Judicial Council.