[No. A031769. First Dist., Div. Four. Jan. 26, 1987.]

BARRY L. SIDERS et al., Plaintiffs and Appellants, v.
HERMAN W. SCHLOO, JR., et al., Defendants and Respondents.

COUNSEL

Barry L. Siders, in pro. per., and Siders & Huovinen for Plaintiffs and Appellants.

Gordon, DeFraga, Watrous & Pezzaglia, Allan DeFraga, Timothy J. Ryan and Bruce C. Paltenghi for Defendants and Respondents.

**OPINION**

SABRAW, J.—Plaintiffs Barry L. Siders and Janice M. Siders appeal from a judgment against them following a court trial on their complaint for breach of contract, negligence and breach of warranty arising out of their purchase of a single-family residence. We reject all of the Siderses' contentions and affirm.

## I. FACTS AND PROCEDURE

In 1972, the Siderses purchased a single-family house located in Diablo, California, from defendants Herman W. Schloo, Jr., and his wife Gerrie M. Schloo. The house was built on previously unimproved land purchased by the Schloos in 1970. The Schloos purchased a set of building plans from Manufactured Homes of California and obtained a building permit from Contra Costa County in the same year.

The Schloos next engaged a man named Herb Robinson to build their residence. At the time they engaged Robinson, they believed that he possessed the sufficient knowledge and skill to properly construct the building pursuant to their plans. However, according to plaintiff Barry Siders, the Contractors State License Board has no record that Robinson was ever licensed as a contractor. Construction commenced in 1970. Although most of the work was performed by Robinson, Herman Schloo did some manual labor on the project under Robinson's direction.[1] Onsite inspections were made by the Contra Costa County Building Inspection Department during the course of the construction which was completed in November 1971. A final building inspection was made and occupancy approval was granted by the county. The lower level of the house was intentionally left uncompleted (with the intention to later finish it as a family room).

Shortly after defendants took occupancy of the house, Herman Schloo was notified that his employer would be transferring him to a new location. The Schloos listed their home for sale and ultimately sold it to the Siderses for $60,000. The sale agreement included requirements that pest control approval be obtained and that certain work involving the driveway and turn-around area be completed.

---

[1]Plaintiffs make much of the fact that Herman Schloo worked as an apprentice carpenter and machine operator for two years after his graduation from high school in 1951. Schloo then served in the United States Navy for four years where he was trained as an air traffic controller. Since his discharge from the Navy and during all times relevant to the present case, Schloo was employed by the federal government as an air traffic controller, not in the construction trades.

Escrow closed and the Siderses took possession of the house in August 1972. Within a couple of weeks, the Siderses noticed that it was not completely level. A wet spot was observed on the unfinished lower level during the winter of 1972-1973. The Siderses claimed that roof drainage problems appeared in the summer of 1973 and the wetness on the lower floor reappeared in the winter of 1973-1974. They asserted that problems with the porch were manifested two years after they took possession. Finally, a contractor working on the Siderses' barn in 1976 noticed what he thought was a problem with a roof overhang on the house.

The Siderses filed their complaint in July 1976. They brought three causes of action: (1) breach of contract; (2) breach of implied warranty; and (3) negligence. In 1977, almost five years after purchase, they had the house inspected for defects by the county building inspection department which identified certain building code deficiencies.

Various pretrial proceedings not directly relevant to this appeal delayed the trial until mid-1984. The parties stipulated that the matter would be submitted on a designated record and trial briefs. The evidence consisted of portions of depositions of the parties, their declarations, expert reports, and other documents. The stipulation permitted the court to consider the evidence, but did not require it to accept as true any hearsay, and the court was free to draw its own inferences from the evidence.

After defendants failed to file a response to the Siderses' brief, the trial court issued a minute order tentative decision in favor of the Siderses. When the Schloos informed the court that their attorney had been arrested for embezzlement and had ceased practicing law, the court set aside its initial decision and allowed them to file a response. After briefing was completed, the court announced a new tentative decision in defendants' favor. The court later amended its tentative decision and ordered that the amended decision would constitute its statement of decision. Judgment was thereafter entered.

The Siderses filed a timely notice of appeal.

## II. ANALYSIS

### A. *The Trial Court Correctly Ruled That the Sale of the House Did Not Include an Implied Warranty.*

The Siderses assert that an implied warranty of quality and fitness was included in their purchase of the house. It is the general rule that such warranties do not extend to sales of real property. The Siderses contend that this sale fell within an exception to the general rule.

In *Pollard* v. *Saxe & Yolles Dev. Co.* (1974) 12 Cal.3d 374 [115 Cal.Rptr. 648, 525 P.2d 88], our Supreme Court briefly traced how two differing lines of warranty law had developed with regard to sales of tangible chattels on the one hand and sales of buildings and land on the other. (*Id.* at p. 377.) After noting both the general rule of caveat emptor applicable in land and building sales and the related rule that implied warranties are not generally applicable to sales of land and buildings, the court explained that exceptions to those rules had developed with regard to some construction contracts because they were essentially contracts for labor and materials. (Citing, inter alia, *Aced* v. *Hobbs-Sesack Plumbing Co.* (1961) 55 Cal.2d 573 [12 Cal.Rptr. 257, 360 P.2d 897].) The court also observed that purchasers of new construction usually rely upon the expertise of the builder, being without such expertise themselves and being unable to examine the finished product without disturbing it. Accordingly, the court held that builders and sellers of "new construction" were subject to the implied warranty that such structures have been designed and built in a reasonably workmanlike manner. (*Id.* at pp. 580-581.)

The Siderses attempted to convince the trial court that their case fell within the *Pollard* rule. The court examined subsequent decisions interpreting *Pollard* and concluded that the term "new construction" had been limited to circumstances where the plaintiff was in privity with the commercial developers of the property in question. Reasoning that the Schloos were not commercial developers in the same sense as *Pollard* and its progeny, the court ruled that no warranty had been implied in the sale to the Siderses.

There was abundant evidence to support the conclusion that the Schloos were owner builders of their personal residence and not in the business of building new homes for sale. Accordingly, we agree with the reasoning of the trial court on this issue. The public policy considerations which justified extension of implied warranty concepts to sales of new construction by commercial developers did not warrant application of implied warranty concepts to this case.

B. *There Was No Breach of Contract Liability.*

■ Plaintiffs' breach of contract theory is not significantly different from their breach-of-warranty claim. They begin by contending that the implied warranties they have already asserted were incorporated into their purchase contract. Based on that incorporation, they assert that the alleged defects also gave rise to contract liability. We conclude that the effort is unpersuasive. Although plaintiffs attempt to present a breach-of-contract claim, there were no terms in the contract of sale, either express or implied, which give rise to contract liability against defendants.

Plaintiffs assert that this case should be governed by the holding in *Aced v. Hobbs-Sesack Plumbing Co., supra,* 55 Cal.2d 573. In that case, defendant contractor (Aced) entered into a contract with plaintiff owners for construction of a home with a floor-based radiant heating system. Aced subcontracted with Hobbs-Sesack to construct and install the heating system. Hobbs supplied all of the labor and materials for construction of the system. When leaks later developed in the system, the owners sued Aced for damages. Aced, in turn, cross-complained against Hobbs, charging that Hobbs had breached an implied warranty of merchantability by supplying substandard materials for the heating system. (*Id.* at p. 577.)

At trial, the court initially found that Aced had failed to prove that the tubing sold by Hobbs to Aced was of unmerchantable quality. However, the court later granted Aced's motion for a new trial. (*Aced v. Hobbs-Sesack Plumbing Co., supra,* 55 Cal.2d 573, 577.) Hobbs appealed, asserting that the trial court's initial decision finding no liability was correct as a matter of law. The Supreme Court disagreed, holding that, because the contract was one for labor and materials, it could be subject to an implied warranty of merchantability. (*Id.* at pp. 580-583.)

Plaintiffs contend that Robinson owed a duty to the Schloos to conform with all applicable laws. Based on *Aced,* plaintiffs contend that they were also entitled to receive the benefit of that alleged duty. As the Schloos respond, however, the evidence in this case was that their contract with Robinson was for labor only and not for materials. Further, unlike the situation in *Aced,* plaintiffs were not parties to the Schloo-Robinson contract. Finally, the bulk of plaintiffs' allegations had nothing to do with defective materials as in *Aced.* Instead, plaintiffs asserted violation of an implied warranty of workmanlike construction (including conformance with the building code), something not at issue in *Aced.* Plaintiffs' reliance on *Aced* is misplaced.

C.  *Defendants Met Their Burden of Proof on the Independent Contractor Issue.*

■ Plaintiffs sought to impose negligence liability on the Schloos based on the theory of respondeat superior. They contend that Robinson was an employee of the Schloos, and argue that the Schloos bear responsibility for Robinson's alleged negligence. We disagree.

In determining that defendants carried their burden of proof to show that Robinson was an independent contractor rather than an employee, the trial court applied the factors set forth in Labor Code section 2750.5: (1) control over the manner of performance of the contract for services; (2) whether the individual is customarily engaged in an independent business; and (3)

whether the assertion of independent contractor status is bona fide and not a subterfuge to avoid liability as an employer.

Here, the trial court found that defendants' declaration disclaiming control over the manner of performance of the work by Robinson was based on firsthand knowledge while plaintiffs' contrary declaration appeared conclusionary. With respect to the second factor, the court found that defendants failed to produce direct evidence showing that Robinson was customarily engaged in work on an independent contractor basis. As to the last factor, the court found that their relationship with Robinson had been genuinely intended as one of independent contractor rather than employee status. After weighing its determinations on each of these factors, the court concluded that defendants met their burden of proof to establish that Robinson was not an employee and, therefore, they could not be liable on the theory of respondeat superior.[2]

Plaintiffs have failed to demonstrate any error by the trial court on this issue. The trial court properly weighed the appropriate factors and reached a decision clearly supported by the evidence. We will not reweigh the evidence now.

D. *Plaintiffs Have Confused Products Liability Concepts With Negligence and Warranty Theories.*

■ In addition to their respondeat superior theory, plaintiffs attempt to justify negligence liability by asserting product liability principles. As noted by defendants, plaintiffs' theory is difficult to follow. In essence, it seems to be that defendants should have been treated as if they were liable for damages because they sold an allegedly defective product. None of the cases cited by plaintiffs support such a theory on facts such as these. If plaintiffs' argument were correct, there would be no need for warranty concepts in the sale of real property improvements. All a subsequent purchaser would have to show in order to establish liability is that some previous owner constructed defective or nonconforming improvements. Plaintiffs' argument fails to demonstrate why we should make such a leap to create a new form of strict liability for homeowners and sellers.

The judgment is affirmed.

---

[2]The trial court also noted that Labor Code section 2750.5 had been adopted in 1978 to provide that a party seeking to rely on the statute in order to avoid employer status must show the individual in question was licensed as a contractor. However, the court correctly concluded that the new provision could not be retroactively applied in this case based on the holding in *Foss* v. *Anthony Industries* (1983) 139 Cal.App.3d 794, 800 [189 Cal.Rptr. 31].

Anderson, P. J., concurred.

**POCHÉ, J.**—I concur in the result but get there differently. On the question of whether an implied warranty of fitness attached to this sale by vendors not in the business of selling or constructing residential housing the lead opinion concludes that the Supreme Court in *Pollard* v. *Saxe & Yolles Dev. Co.* (1974) 12 Cal.3d 374 [115 Cal.Rptr. 648, 525 P.2d 88] has determined that such liability pertains only to commercial sellers and developers. It is accurate to say that such were the facts in *Pollard* but the problem is that Justice Clark's opinion for a unanimous court used language much broader than those facts. He put the question this way: "This case presents the issue whether the doctrine of implied warranties of quality and fitness—now applicable to the sale of goods and to some contracts for labor and material—should also apply to the sale of newly constructed real property." (*Id.,* at p. 376.) Not one word about limiting the question or the holding to those in the business.

Nor is there anything in the reasoning of *Pollard* to suggest such limitation. The Supreme Court's conclusion is that "builders and sellers of new construction should be held to what is impliedly represented—that the completed structure was designed and constructed in a reasonably workmanlike manner." (*Id.,* at p. 380, fn. omitted.)

Just last year in *Becker* v. *IRM Corp.* (1985) 38 Cal.3d 454 [213 Cal.Rptr. 213, 698 P.2d 116, 48 A.L.R.4th 601], the California Supreme Court interpreted its prior holding in *Pollard* this way: "it was held that an implied warranty of quality attaches to the sale of new construction. The court pointed out that the doctrine of implied warranty in a sales contract is based on the actual and presumed knowledge of the *seller,* reliance on the *seller's* skill and judgment, and the ordinary expectations of the parties." (*Becker* v. *IRM Corp., supra,* at p. 460, italics added.) Again, the court did not mention the new requirement my colleagues find, i.e., that the builder or seller be in the business. Nor is there any extant lower court opinion cited by name that even hints at the majority opinion's thesis.

Thus my vote of affirmance is premised not upon the constraints of stare decisis. I do not read the relevant California cases as having *decided* whether or not such implied warranties apply to the casual seller of a new residence. That appears also to be the Legislature's reading of the state of the law since otherwise it would be an idle act to imposing liability for willful or negligent failure of any seller of real property to disclose certain defects as set forth in Civil Code section 1102 et seq., operative January 1, 1987. Since the Legislature has imposed liability on such sellers which falls short of strict liability there is no reason for the courts to interfere with that determination.