GREETER CONSTRUCTION  )
COMPANY,  )
  )
Plaintiff/Appellant,  )  Appeal No.
  )  01-A-01-9808-CH-00427
v.  )
  )  Davidson Chancery
RICHARD A. TICE and  )  No. 95-1287-III
NANCY TICE,  )
  )
Defendants/Appellees.  )

**FILED**

August 20, 1999

Cecil Crowson, Jr.
Appellate Court Clerk


COURT OF APPEALS OF TENNESSEE


APPEAL FROM THE CHANCERY COURT FOR DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE


THE HONORABLE CLAUDIA BONNYMAN, SPECIAL CHANCELLOR


WILLIAM L. ABERNATHY, JR.
Leitner, Williams, Cooley
 and Napolitan
2300 First American Center
Nashville, Tennessee  37238-2300
      ATTORNEY FOR PLAINTIFF/APPELLANT


PETER H. CURRY
Tuke Yopp & Sweeney
NationsBank Plaza, Suite 1100
414 Union Street
Nashville, Tennessee  37219
      ATTORNEY FOR DEFENDANTS/APPELLEES


AFFIRMED AND REMANDED


WILLIAM B. CAIN, JUDGE

# O P I N I O N

This appeal represents a consolidated case commenced by Appellant, Greeter Construction Company (hereafter Greeter) against the Appellees Richard and Nancy Tice. Greeter had sued the Tices for an amount allegedly owed under a construction contract. The Tices counterclaimed for breach of said contract.

The Tices contracted with Greeter for the renovation of their Brook Hollow Drive home. The primary portion of this renovation was an 1100 square foot addition to the house. The construction contract reads in pertinent part as follows:

* * *

All work is to be performed in a professional workmanlike manner, free from all liens or claims of mechanics or materialmen, subject to the stipulations and other provisions on the additional attached documents:

**"Estimate & Project Outline" and "Stipulations".**

In case of conflict between the plans and specs the plans shall control over the specifications and the provisions of this contract shall control both.

· The work to be performed by [Greeter] to the Agreement and shall be substantially commenced approximately on **August ~~10,~~ 17, 1994** and shall be substantially completed on **November ~~7,~~ 8, 1994.**

· [TICES] promise[] to pay or cause to be paid to [Greeter] in consideration for his performance **all costs for material and labor plus 15%** payable as follows: *Not to exceed total estimate of Construction project of $49,750.00 unless agreed upon by "owner."* /s/ JAG
/s/ NT

This agreement, complete with handwritten and initialized addenda and alteration, was entered into by the parties on August 14, 1994. From this point on, the Owners Tice and Greeter enjoyed what the record reveals to be at best a problematic relationship. Despite Nancy Tice's frequent presence on the job site and extensive correspondence between the Tices and Greeter, the renovation project experienced significant delay and cost inflation. In addition to

unexpected cost increases and labor delays, three different rains, occurring in September October and November of 1994 caused extensive damage to the original structure as well as to the addition. Without any specific prior notice, the Tices terminated Greeter Construction on December 5, 1994.

On April 24, 1995, Greeter filed a complaint in the Davidson County Chancery Court to enforce a materialman's lien in the amount of $12,000 allegedly due on the contract. The Tices responded and counterclaimed for breach, alleging the following:

* * *

1. [Greeter] breached the contract between the parties by:
    a.   Failing to construct the improvements in accordance with the plans and specifications.
    b.   Failing to construct the improvements within the budget estimate.
    c.   Failing to construct the improvements in a professional workmanlike manner.
    d.   Failing to complete the improvements in a timely manner.
    e.   Failing to obtain authorization from Defendants before ordering material, the cost of which exceeded the agreed to estimate.
2.    As a result of [Greeter]'s breach of the contract, Defendants have suffered damages in the amount of approximately $52,500, the exact amount to be determined at trial.

The case was tried without a jury before Hon. Claudia Bonnyman, Special Chancellor, on April 6, 1998. The Chancellor's memorandum discloses the following findings of fact which are entitled to a presumption of correctness on appeal absent a showing that the evidence preponderates against those findings. Tenn. R. App. P. 13(d).

Work on the project began in August of 1994. Even the first stage, demolition, took longer than Alan Greeter anticipated. He asserts that the Owners made changes in the project which caused delay. However, Greeter did not provide written change orders to support that position. By the end of September, Alan Greeter admitted to the Owners that the cost overrun for the first stage was already 10-15%. He advised the Owners that the contract price was still valid, however, because there were cost savings to be had later in the project. In fact, the cost overruns continued. At trial he did not know what the revised cost would be if he had completed the project. The Owners paid Greeter almost twenty thousand

3

($20,000) dollars (including the deposit) by the time of termination in early December.

The project had numerous problems. First, the Owners proved that Alan Greeter was inexperienced and had previous large cost overruns on one of the few projects he had supervised before the Owner's project. It became obvious to the Owners that this project could not be completed for any amount near the contract price. Second, after the work began, Alan Greeter concluded that the design for the back of the house was not possible for him to follow. This was disappointing for the Owners but they accepted such deviations for a few months. Third, the renovations design required removal of an exterior wall and a new roof for the addition which would tie into the old roof. It was expected that for a brief period, the inside of the house would be exposed to weather. Alan Greeter admitted that Greeter had a duty to protect the house from rain to the extent that could be done. The Owners proved that Greeter failed to take precautions to protect the interior of the house during rains in October and November. The last rain resulted in major water damage to the interior costing the Owners $26,078.19 to repair. ...

On December 5, 1994, the Owners terminated the project with Greeter because of the problems discussed above. Builder's Group completed the project, (reworking much of the Greeter construction) pursuant to the original plans. ... Greeter was aware that delay and cost problems can and do arise.

From the order below Greeter appeals asserting as its issue "[w]hether the Tices are entitled to damages after unilaterally terminating the building contract with Greeter Construction Company."

The Special Chancellor concluded regarding the liability of the parties:

The construction agreement Greeter Drafted, however, did not provide for cost contingencies. Although the contract was captioned a "cost plus" contract, the agreement was amended to establish a set building cost which could only be changed by agreement. The Owners did not agree to increase the contract price of $49,750. ...

* * *

The Owners are awarded a judgment against Greeter Construction Company in the amount of sixty three thousand, four hundred thirty-three ($63,433.00) dollars.

So much of this case depends on an appraisal of the credibility of Allen Greeter as opposed to the credibility of Richard and Nancy Tice. On appeal, we are bound by the same rules as were articulated in *Weaver v. Nelms*, 750 S.W.2d 158 (Tenn. App. 1987).

4

In this nonjury case, the trial judge, as the trier of fact, had the opportunity to observe the witnesses, Nelms, his daughter Nancy Wilson, and her husband, Bill Wilson, as they testified from the witness stand concerning the transaction. The weight, faith and credit to be given to any witness' testimony lies in the first instance with the trier of fact who has the opportunity to observe the manner and demeanor of the witnesses as they testify. The credibility accorded by the trier of fact will be given great weight by the appellate court. *See Town of Alamo v. Forcum-James Co.,* 205 Tenn. 478, 327 S.W.2d 47 (1959); *Sisk v. Valley Forge Insurance Co.*, 640 S.W.2d 844 (Tenn. App. 1982).

750 S.W.2d 158, 160 (Tenn. App. 1987).

The contract provided that all of the work was to be preformed by Greeter "... in a professional workmanlike manner ..." and to be completed by November 8, 1994. The total cost of the project was not to exceed $49,750.00 unless agreed to by the owners.

Early into the work performance it became apparent that significant cost overruns were inevitable. The trial court held that Allen Greeter was an inexperienced contractor and in the few projects he had supervised previously, large cost overruns were experienced. His father, John W. Greeter, was the founder and real owner of Greeter Construction Company but took little part in the Tice job and provided practically no oversight of the job. In order to construct the addition to the existing home it was necessary to remove one entire exterior wall, thus exposing the house to the elements. Three times the house was damaged by rainfall. On September 23, 1994, the existing kitchen in the house fell in due to rain damage. No precautions had been taken to protect against damage from rain. A similar incident occurred in the first part of October but with less damage. During the weekend of November 26, 1994, three weeks after the contract was to have been finished, very heavy rainfall inundated the house with water resulting in massive internal destruction, requiring extensive reconstruction by contractors employed by the insurance companies of both Greeter and Tice. Mrs. Tice testified that weather forecast prior to November 26, had indicated rain and that she and Mr. Tice had gone visiting elsewhere for the Thanksgiving holidays. Upon their return they found the extensive water damage to the house and it appeared that no pre-rain

precautions had been taken by the contractor to protect the exposed interior of the home.

In spite of the delay in completing the work under the contract, Greeter preformed practically no work on the house during the month of November 1994. While all of the delay was not caused by Greeter, the trial court held that the problems with delay, failure to protect the job from rainwaters, cost overruns and inferior workmanship, breached the contract and justified Mr. and Mrs. Tice in terminating the building contract with Greeter Construction Company. The evidence certainly does not preponderate against these conclusions of the trial judge.

Appellant argues that, despite its inability to keep within the price it set with the Tices, Greeter was entitled to notice of dissatisfaction on the part of the Tices before the termination of the contract on December 5. Appellant argues that, absent that notice, the Tices termination amounts to "the first material breach" to the construction contract of August 17, 1994. As this court has previously stated, "[r]equiring notice is a sound rule designed to allow the defaulting party to repair the defective work, to reduce the damages, to avoid additional defective performance, and to promote the informal settlement of disputes." *McClain v. Kimbrough Const. Co., Inc.* 806 S.W.2d 194, 198 (Tenn. Ct. App. 1990) *citing Pollard v. Saxe & Yolkes Dev. Co.,* 12 Cal.3d 374, 525 P.2d 88, 92, 115 Cal. Rptr. 648, 652 (1974); *Sturdy Concrete Corp. v. Nab Constr. Corp.,* 65 A.D.2d 262, 411 N.Y.S.2d 637, 644 (1978). However it is equally true that, "[n]otice ought to be given when information material to the performance of a contract is within the peculiar knowledge of *only* one of the contracting parties." *McClain,* 806 S.W.2d at 198, *emphasis added.* The rain damage resulting from the absent exterior wall and missing tarps, the increased costs far outstripping the estimated costs, the delay in beginning the construction contract, all were well within the knowledge of both contractor and owner. Even if one were to find to the contrary, the writings between the parties appearing of record evidence notice to Greeter of the Tice's dissatisfaction with at least the cost overruns. Thus we affirm the trial court's finding of Greeter's inability and disinclination to perform under the contract. This inability operated as an uncured material breach which excused the notice requirement

6

discussed in *McClain*, 806 S.W.2d at 199.

No issue is made on appeal as to the amount of damages awarded to Mr. and Mrs. Tice for breach of contract and our review of the record indicates that the evidence as to damages does not preponderate against the findings of the trial court.

The judgment of the trial court is in all respects affirmed and costs are taxed against Appellant Greeter Construction Company.

_____
WILLIAM B. CAIN, JUDGE

CONCUR:

_____
BEN H. CANTRELL, P.J., M.S.

_____
WILLIAM C. KOCH, JR., JUDGE