Filed 10/21/20  Price v. Gullan CA4/1
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

DAVID PRICE,

    Plaintiff and Appellant,

    v.

RONALD GULLAN et al.,

    Defendants and Respondents.

D075332

(Super. Ct. No. 37-2013-00041632-CU-CO-CTL)

APPEAL from an order of the Superior Court of San Diego County, Frederic L. Link, Judge.  Affirmed.

Weil & Associates and David Weil for Plaintiff and Appellant.

Zuccaro Law Firm, Emil A. Zuccaro; Law Offices of Mary A. Lehman and Mary A. Lehman for Defendants and Respondents.


Plaintiff purchased a yacht, and then sued his broker after discovering the yacht was defective.  After a bench trial, the court found plaintiff did not prove his case and awarded the broker $150,000 in prevailing party attorney fees.  On appeal, plaintiff challenges this fee award, claiming the broker's attorney fees motion was untimely and, even if it was timely, the broker was not entitled to attorney fees.  We affirm.

FACTUAL AND PROCEDURAL SUMMARY

*Background*

In 2009, David Price purchased a yacht from two individuals (Sellers) for $108,300. Ronald Gullan, the owner of Yachtfinders/Windseakers, Inc. (collectively Gullan), served as the dual broker for Price and the Sellers. Gullan did not sign the purchase agreement (Agreement), but Price acknowledges Gullan was a third party beneficiary of the contract. The Agreement included an attorney fees clause providing the broker was entitled to recover attorney fees if he prevailed in an action "arising out of or relating to" the Agreement.[1]

After the sale, Price discovered structural and mechanical problems with the yacht, and then learned the vessel had sunk near Catalina Island and had been salvaged with mostly cosmetic repairs.

Price sued Gullan, asserting three causes of action: breach of fiduciary duty, negligence, and declaratory relief. Price's theory was that Gullan should have been aware of, and disclosed, the fact of a prior salvage operation based on Gullan's review of a title abstract reflecting a satisfied lien claim by "Cat Tow Inc.," a maritime towing and salvage company. Price alleged he

---

[1] The attorney fees provision stated: "In any action, proceeding, or arbitration between Buyer and Seller arising from or relating to this Agreement, or the invalidity, interpretation, performance, or breach thereof, the prevailing party shall be entitled to an award of reasonable attorney's fees and costs. *If Broker is a prevailing party in any action or proceeding arising out of or relating to this Agreement, or if Broker brings an interpleader action, or if Broker provides assistance in any dispute, Broker shall be entitled to an award, judgment or payment including Broker's attorneys' fees and costs.* Buyer and Seller authorize Broker to deduct such attorneys' fees and costs from the funds in any interpleader action, and from the funds of any person against whom Broker has prevailed." (Italics added.)

2

was entitled to attorney fees against Gullan under the attorney fees provision in the Agreement.

After unsuccessfully moving for summary judgment against Gullan, Price filed an amended complaint adding the Sellers as defendants and asserting fraud claims against the Sellers.

*Bench Trials*

In 2016, Superior Court Judge Frederic Link held a bench trial on Price's claims against the Sellers. After the trial, the court found the Sellers had defrauded Price by not disclosing that the boat had previously been damaged. The court entered judgment for Price against Sellers for $108,300, plus $102,846.30 in prevailing party attorney fees.

On September 25, 2017, Judge Link held a bench trial on Price's claims against Gullan. Before trial, the parties agreed Sellers had actively concealed from Gullan the fact "the boat was a 'sinker,' " but disagreed whether Gullan breached a duty by failing to research and disclose Cat Tow's satisfied lien on the abstract of title. Gullan argued the applicable professional standards do not require a broker to investigate or disclose *satisfied* liens. The parties also disagreed whether the Agreement transferred the risks and due diligence obligations from Gullan to Price.

At the end of the first day of trial, the court requested briefing on the issue whether the Agreement's as-is clause protected Gullan from any liability for defects regarding the yacht.

The next day, on September 26, the court ruled in Gullan's favor on the breach of fiduciary duty claim. Price asked the court to dismiss his negligence cause of action and did not seek a ruling on his declaratory relief claim. Neither party requested a statement of decision. Price did not designate a reporter's transcript of the trial to be part of the appellate record.

3

On December 7, 2017, Judge Link signed and entered a judgment in Gullan's favor "on all of [Price's] claims." The filed judgment (prepared by Gullan's counsel and sent to the court on October 27, 2017) had the caption "[PROPOSED] JUDGMENT AFTER COURT TRIAL." The judgment stated the court "ruled from the bench in [Gullan's] favor and ordered that [Price] receive nothing from said Defendant[ ]." The judgment also stated: "As a consequence of such judgment, [Gullan] shall recover [his] costs, including attorney's fees, from . . . Price. [Gullan's] attorney's fees will be determined by motion to be heard by the Court." The next paragraph stated that Price shall pay Gullan "attorney's fees and costs in the amount of [¶] $ ____." In the blank space for the amount, Judge Link handwrote "T B D" and added his initials. Although the judgment was signed by Judge Link and had a file stamp of December 7, 2017, the word "[PROPOSED]" remained in the caption. Neither party served a notice of entry of judgment.

About three weeks later, on December 26, Gullan submitted a Memorandum of Costs, seeking $5,996.95 in costs, and stating attorney fees will be "determined on motion." (Capitalization omitted.)

*Attorney Fees Motion*

Eight months later, on August 28, 2018, Gullan filed a motion seeking $440,198.45 in attorney fees from Price, asserting he was entitled to recover his fees as the prevailing party under the attorney fees provision in the Agreement. He submitted his counsel's declaration explaining the fees and attaching his detailed billing records.

As to his entitlement to the fees, Gullan argued the Agreement explicitly provided for attorneys fees if he ("the Broker") prevailed in an action "arising from or relating to this Agreement." He said the fact he did not sign the Agreement was immaterial because he was identified in the

4

Agreement as a party entitled to fees, and was a third-party beneficiary of the contract.

On the motion's timeliness, Gullan's counsel attached a document identified in the Register of Actions, which was the same document as the December 7, 2017 filed Judgment (with the same file stamp and the same December 7, 2017 date next to Judge Link's signature), except for two changes (which Gullan's counsel said were made by the court clerk on April 23, 2018):  (1) the word "PROPOSED" was crossed out in the caption; and (2) the letters "T B D" were crossed out, and the amount $5,996.95 was added with a date (4-23-18) and the clerk's initials.  The only file stamp on this document was the December 7, 2017 file stamp.

Based on these documents, Gullan argued its August 2018 motion was timely because the "hand interlineated document created by the Clerk on April 23, 2018 is the *only* appealable order or judgment entered in this case . . . and *is the document that triggered the 180 day clock for filing this [attorney fees] motion . . . .*"

*Opposition to Attorney Fees Motion*

Price opposed the motion, arguing it was untimely and Gullan was not entitled to prevailing party attorney fees.  On the timeliness issue, Price asserted the December 7 final judgment was the trigger for the 180-day deadline to file the motion, and the clerk's action in crossing out the "T B D" notation and adding the recovered costs did not extend this date.

As to entitlement, Price conceded Gullan was a third-party beneficiary of the Agreement, but argued the breach of fiduciary duty claim was not encompassed within the attorney fees provision.  Specifically, Price argued his relationship with Gullan "was not created by any contract," and instead Gullan's duties arose from regulations providing that a "yacht

5

brokerage . . . owes a fiduciary duty to his or her client." Price thus argued that because Gullan's duties owed to him arose solely from statutes rather than the contract, Price's breach of fiduciary claim did "not fall under the umbrella of 'arising out of or related to' the . . . [A]greement."

Price additionally argued the $440,000 requested by Gullan was grossly overstated and unreasonable. Price said, "[t]he idea that an attorney would allow $400,000 in attorney fees to accumulate in the defense of a simple $100,000 case challenges the entire concept of ethical billing behavior."

Neither party's brief (nor Gullan's reply brief) contained any reference to, or discussion of, the issue whether the court had discretion to permit a late attorney fees motion, and if so whether there was good cause for exercising this discretion.

*Hearing and Subsequent Orders*

On November 16, 2018, the court held a hearing on the motion. Both counsel appeared at the hearing. The hearing was not reported, and there is no reporter's transcript or other documentation in the record reflecting what was said at this hearing. The minute order issued after the hearing stated: "The Court hears argument from counsel as to Motion for Award of Attorney Fees. The court awards . . . attorney fees in the amount of $150,000. [Gullan's attorney] to draft up a new order *and Judgment* for the court." (Italics added.)

Less than two weeks later, on November 29, the court entered an order awarding attorney fees to Gullan. The order stated: "Having read the motion, the memoranda and the declarations filed by the parties, and having heard argument of counsel, the Court refers to its Judgment entered on December 7, 2017, where it found that [defendant Gullan is] the prevailing part[y] in this action and . . . [is] entitled to recover [his] attorneys' fees from

6

[Price].  [¶]  [Gullan's attorney fees motion] IS GRANTED.  [¶]  [Plaintiff Price to pay] $150,000.00 to [defendant Gullan] for said attorney fees."

Two weeks later, on December 14, 2018, the court entered a "new" judgment prepared by Gullan's counsel, which included a description of the following procedural timeline:  (1) on September 26, 2017 the court ruled from the bench in Gullan's favor; (2) on December 26, 2017, Gullan filed his costs memorandum; (3) on April 23, 2018, "the then temporarily assigned Court Clerk made hand interlineations on the December 7, 2017 proposed judgment inserting the amount of $5,996.95 for attorney's fees *and* costs to be awarded to [Gullan].  No Notice of Entry was served by the Court Clerk or any party.  The Court Clerk's interlineation of the $5,996.95 amount as including attorney's fees, was an error"; (4) on August 28, 2018, Gullan filed his attorney fees motion; (5) on November 16, 2018, the court held a hearing on the motion and awarded Gullan $150,000 in attorney fees; and (6) on November 29, the court signed an order granting the motion for the amount awarded.

This "new" December 14 judgment then stated: "Judgment is granted in favor of [Gullan] and against [Price] . . . on [Price's] claim of breach of fiduciary duty tried to the Bench.  [Price's] negligence claim is dismissed with prejudice.  As a consequence of such judgment, [Gullan] shall recover . . . costs, including attorney's fees . . . .  [¶] [Price] shall pay [Gullan's] attorney's fees in the amount of $150,000 [plus costs of $5,996.95] for a [total amount] of $155,996.95."

Gullan served a notice of entry of the December 14, 2018 judgment on Price on December 17, 2018.  Price filed this appeal challenging the attorney fees on January 25, 2019.

7

DISCUSSION

## I. *Timeliness*

Price contends Gullan's attorney fees motion was untimely. We agree, but conclude the court had good cause to excuse the delay. (Cal. Rules of Court, rule 3.1702(d).)[2]

### A. *Motion Was Untimely*

Rule 3.1702(b)(1) provides: "A notice of motion to claim attorney's fees for services up to and including the rendition of judgment in the trial court . . . must be served and filed within the time for filing a notice of appeal . . . ." With exceptions not applicable here, a notice of appeal must be filed on or before the earliest of 60 days after the service of a notice of entry of judgment or 180 days after entry of the judgment. (Rule 8.104.)

Assuming the December 7, 2017 judgment was the final judgment, the 180-day deadline applies because there was no service of notice of entry of this judgment. (Rule 8.104). Thus, the attorney fees motion would be untimely under rule 3.1702(b)(1). Gullan filed the motion on August 28, 2018, 264 days after the December 7, 2017 filed judgment. The motion was thus 84 days late.

Gullan suggests the motion was timely because it was filed within 180 days of the April 2018 handwritten addition of costs to the December 2017 judgment and the striking of the word "PROPOSED." The argument is without merit.

Where a signed, final judgment resolves all issues between the parties and provides a party is entitled to costs and attorney fees, but leaves the amount for later determination, the deadline to appeal the judgment begins

---

2    All rule references are to the California Rules of Court.

to accrue at the time this judgment is entered. (*Torres v. City of San Diego* (2007) 154 Cal.App.4th 214, 222 (*Torres*) ["[w]here the judgment is modified merely to add costs [and] attorney fees . . . , the original judgment is not substantially changed and the time to appeal [from that judgment] is . . . not affected"]; accord *Hjelm v. Prometheus Real Estate Group, Inc.* (2016) 3 Cal.App.5th 1155, 1163-1164; see also *Laraway v. Pasadena Unified School Dist.* (2002) 98 Cal.App.4th 579, 582, fn. 3 (*Laraway*).)

The time to appeal cannot "be restarted or extended by the filing of a subsequent judgment or appealable order *making the same decision*." (*Laraway, supra,* 98 Cal.App.4th at p. 583, italics added.) With respect to challenging fees and costs, the party has the option to include this challenge with its challenge to the judgment, or to file a separate notice of appeal to challenge a later costs and fees determination. (See *Grant v. List & Lathrop* (1992) 2 Cal.App.4th 993, 996-997.) But "a separately appealable order [such as pertaining to attorney fees] after final judgment does not substantially modify the judgment itself for purposes of computing the time in which to file a notice of appeal." (*Dakota Payphone, LLC v. Alcaraz* (2011) 192 Cal.App.4th 493, 505; see *Grant*, at pp. 996-998.) Thus, for purposes of filing a motion to obtain attorney fees, the 60- or 180-day trigger begins at the time the initial judgment is entered.

Under these rules, the 180-day period for Gullan to file an attorney fees motion began on December 7, 2017, and ended 180 days later, on June 5, 2018. The fact a clerk added costs to the December 7, 2017 judgment in April 2018 and/or that the court again filed the judgment with the same conclusion one year later on December 14, 2018 (but adding costs and attorney fees), does not affect this deadline for the attorney fees motion. (*Torres, supra,* 154 Cal.App.4th at p. 222.) Likewise, the fact the court did not cross out the word

9

"PROPOSED" when it signed the filed judgment on December 7, 2017, does not affect its status as a final judgment.  In deciding whether a judgment is final, a court looks to the substance of the document, not the form.  (See *Dana Point Safe Harbor Collective v. Superior Court* (2010) 51 Cal.4th 1, 5; *Griset v. Fair Political Practices Com*. (2001) 25 Cal.4th 688, 698.)  As the trial court recognized in its later November 29, 2018 order, the December 7, 2017 judgment was in substance a final resolution of all issues between the parties, except for the reserved attorney fees and costs amounts.

B.  *Court Did Not Abuse Discretion in Permitting Late Filing*

Gullan alternatively contends the court properly exercised its discretion to allow it to file a late attorney fees motion.

1.  *Legal Principles*

Rule 3.1702(c)(2) permits the parties to stipulate to extend the time for filing a motion for "up to an additional 60 days," and rule 3.1702(d) states: "*For good cause*, the trial judge may extend the time for filing a motion for attorney's fees in the absence of a stipulation or for a longer period than allowed by stipulation."  (Italics added.)

The purpose of this good-cause provision is to provide the trial court with flexibility to allow a late attorney fees motion when warranted by the factual circumstances.  (*Robinson v. U-Haul of California* (2016) 4 Cal.App.5th 304, 326-327 (*Robinson*); *Lewow v. Surfside III Condominium Owners Assn., Inc.* (2012) 203 Cal.App.4th 128, 134-136 (*Lewow*).)  A court may accept a late motion even if the party did not seek relief until after the deadline.  (*Robinson,* at p. 326.)  This rule is " ' "remedial" and is to be given a liberal, rather than strict interpretation.' "  (*Ibid.*; *Lewow,* at p. 135*;* see also *Barragan v. County of Los Angeles* (2010) 184 Cal.App.4th 1373, 1382

10

["modern trend of judicial decisions" favors granting relief for a protected party under a remedial statute "unless absolutely forbidden by statute"].)

Factors relevant to the good-cause analysis include whether counsel acted reasonably; whether the court found counsel's explanation credible; and whether the defendant suffered any prejudice from the delay. (See *Robinson, supra,* 4 Cal.App.5th at pp. 327-328; *Lewow, supra,* 203 Cal.App.4th at pp. 135-136.) The trial court has considerable flexibility in considering these factors. Even a claim of inadvertence or an honest mistake of law, "if it is not prejudicial, may constitute good cause for a late filing." (*Robinson,* at pp. 326-328; see *Lewow,* at pp. 135-136; see also *Pollard v. Saxe & Yolles Dev. Co.* (1974) 12 Cal.3d 374, 380-381 [cost bill] (*Pollard*).)

We reverse a trial court's good-cause determination only if it was arbitrary or capricious, or resulted in a miscarriage of justice. (*Robinson, supra,* 4 Cal.App.5th at p. 327; see *Cussler v. Crusader Entertainment, LLC* (2012) 212 Cal.App.4th 356, 366 [defining abuse of discretion standard].) Because the facts pertaining to the timeliness of an attorney fees motion depend on the court's evaluation of the earlier proceedings and its first-hand assessment of counsel and the asserted justifications for the delayed filing, reviewing courts must "pay special deference to the trial court's view . . . ." (*Robinson,* at p. 327.) "A litigant faces a steep uphill battle in seeking to reverse a court's finding of 'good cause.'" (*Id.* at p. 326.)

### 2. *Analysis*

Under this deferential standard, we find sufficient basis to support a finding of good cause. First, although we agree with Price the December 7 judgment was a "final" judgment for purposes of triggering the 180-day period for filing an attorney fees motion, Gullan's counsel's inadvertence or apparent misunderstanding of the rule was not so unreasonable as to

11

preclude the court from hearing the motion on the merits.  As reflected in the court's December 2018 "new" judgment, the court found a substitute clerk had made some notations in April 2018 on the December 7, 2017 judgment that were incorrect or confusing, and the court appeared to indicate that the clerk did so without following specific direction from the court.  Additionally, it was not until April 2018 that the word "PROPOSED" was crossed out in this judgment.  The court's direction to Gullan's counsel in November 2018 to prepare a new judgment setting forth the procedural timeline shows the court was concerned that the record had become confused with respect to what had occurred after the court ruled in Gullan's favor at the end of trial.  Under these circumstances, the court had a sound basis to conclude Gullan's counsel's mistake was not unreasonable.

More important, Price does not point to any prejudice resulting from Gullan's delay in filing the motion.  There was no showing, for example, that any information (witnesses or documents) became unavailable during the 84-day period after the rule 3.1702(a) deadline.  The same trial judge who had conducted the two bench trials was the decisionmaker on the attorney fees motion.  The court had already found Gullan was a prevailing party, and thus the main issue was the reasonableness of the requested fees, which were documented in detailed time records.  Price obtained all the procedural protections to which he was entitled if Gullan had timely filed the motion, and he successfully convinced the court that the fee claim was substantially inflated, resulting in a fee award of only about 35 percent of the claimed amount.

Price argues that even if there are sufficient grounds in the record to support a good-cause finding, we cannot affirm on this basis because Gullan did not seek relief under rule 3.1702(d) in his moving or reply papers filed

12

below.  However, without a reporter's transcript of the proceedings, or other form of a written description of what occurred at the attorney fees motion hearing, we are required to presume Gullan's counsel raised, and the court addressed, the good-cause issue at the hearing.

"In reviewing any order or judgment we start with the presumption that the judgment or order is correct, and if the record is silent we indulge all reasonable inferences in support of the judgment or order." (*Chalmers v. Hirschkop* (2013) 213 Cal.App.4th 289, 299.)  Thus, where no reporter's transcript is provided and the missing information could have been presented at the hearing, we presume the unreported proceedings would demonstrate the absence of error.  (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609 (*Jameson*); *In re Estate of Fain* (1999) 75 Cal.App.4th 973, 992.)  " ' "[I]f any matters could have been presented to the court below which would have authorized the order complained of, it will be presumed that such matters were presented." ' " (*Jameson,* at p. 609.)

It was Price's burden to provide an adequate record, including by obtaining the presence of a reporter at the attorney fees hearing.  (*Jameson, supra,* 5 Cal.5th at pp. 608-610.)  Alternatively, Price could have satisfied his burden by using the agreed or settled statement procedure to create a record documenting the nature of the arguments at the attorney fees hearing. (Rules 8.134, 8.137)  Without an affirmative showing of error, we are required to presume Gullan asked the court at the hearing to find good cause to file the late motion, and that the court exercised its discretion to find in Gullan's favor on this issue.

In his reply brief, Price contends that although the time deadlines in rule 3.1702 are not jurisdictional, the deadlines are "mandatory" and the

court can permit an untimely filing only if the petitioner successfully seeks relief from default under Code of Civil Procedure section 473.[3]

This argument is unsupported by the language of rule 3.1702(d). Nothing in this rule suggests that the Legislature intended to "import" section 473 procedures and requirements into the good-cause standard. (*Robinson*, *supra*, 4 Cal.App.5th at pp. 326-327; see also *Lewow*, *supra*, 203 Cal.App.4th at pp. 134-136; *Gonzalez v. Santa Clara Dept. of Social Services* (2017) 9 Cal.App.5th 162, 168; Pearl, Cal. Attorney Fee Awards (Cont.Ed.Bar 3d ed. 2018) § 11.40.)

Price relies on *Russell v. Trans Pacific Group* (1993) 19 Cal.App.4th 1717 (*Russell*), which held that under a predecessor rule (former rule 870) a trial court had no discretion to disregard compliance with the requirement that a party file a noticed motion for attorney fees and that section 473 was the sole basis for seeking relief under the circumstances.

*Russell* is not controlling here. First, *Russell* was addressing the noticed motion requirement (rather than the timeliness issue) and focused on the legislative history reflecting that the Legislature intended the *noticed-motion requirement* to be mandatory. (*Russell, supra,* 19 Cal.App.4th at pp. 1725-1726.) Second, former rule 870 analyzed in *Russell* was materially different from the current rule 3.1702(d) because it limited a court's discretion to extend the time to file a noticed motion to "a period not to exceed 30 days." (Former rule 870(b)(3); see *Lee v. Wells Fargo Bank, N.A.* (2001) 88 Cal.App.4th 1187, 1198.) The current amended rule places no time restriction on a court's discretion, and instead provides that for good cause the trial court may extend the time for filing an attorney fees motion without

---

3      All unspecified statutory references are to the Code of Civil Procedure.

a specific limitation, and also expressly provides that this extension can be longer than that permitted by stipulation (60 days). We interpret this amendment as reflecting an intent to broaden the court's discretion to allow attorney fees motions filed beyond the statutory appellate period without requiring resort to the section 473 procedure. (See *Lee,* at p. 1198.)

Additionally, even at the time *Russell* was decided, the California Supreme Court and several Courts of Appeal had expressed the view that the trial courts have the inherent power to grant a costs and/or attorney fees request that does not strictly comply with statute. (See, e.g., *Pollard, supra,* 12 Cal.3d at pp. 380-381 [court had discretion to permit untimely cost bill where no prejudice]; *Gunlock Corp. v. Walk on Water, Inc.* (1993) 15 Cal.App.4th 1301, 1304-1305 [recognizing court's discretion to permit late filings absent any prejudice]; *Hoover Community Hotel Development Corp. v. Thomson* (1985) 168 Cal.App.3d 485, 487-488 [failure to file a timely costs motion does not preclude the court from awarding costs where there was no prejudice to the opposing party].)

## II. *Entitlement to Attorney Fees*

Price next contends the court erred in finding Gullan was a party entitled to recover prevailing party attorney fees under the Agreement.

Price concedes Gullan was a third party beneficiary of the Agreement, *and* that Gullan (as Broker) was a party specifically entitled to receive prevailing party attorney fees under the attorney fees clause. (See fn. 1, *ante*.) But he argues the court erred in awarding the fees because the Agreement provides for attorney fees only "[i]f Broker is a prevailing party in any action or proceeding *arising out of or relating to this Agreement . . . .*" (Italics added; see fn. 1, *ante*.) He contends the action did not "arise out of or relate" to the Agreement.

15

Generally, when a party prevails on a tort claim, the question whether that party is entitled to attorney fees under a contractual provision depends on the language of the contractual provision and whether the type of claim is within the scope of that provision. (*Exxcess Electronixx v. Heger Realty Corp.* (1998) 64 Cal.App.4th 698, 708; see *Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 751; *Santisas v. Goodin* (1998) 17 Cal.4th 599, 608; *Xuereb v. Marcus & Millichap, Inc.* (1992) 3 Cal.App.4th 1338, 1342-1343.) In determining the scope of the provision, the courts examine the contractual language, interpreting the words in their " 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage.' " (*Mountain Air,* at p. 752.)

Price argues that in this case his breach of fiduciary duty claim did not come within the attorney fees provision because his action did not "arise from or relate to" the Agreement. He notes there is a specific statutory scheme (the Yacht and Ship Brokers Act) requiring a yacht brokerage to act as a fiduciary to a buyer or seller of a yacht. (See Harb. & Nav. Code, § 701, subd. (a)(1)).) Based on this statutory duty, Price argues his breach of fiduciary duty claim arose from the statutes, *and not the Agreement.*

Price reads the "arising from or relating to" contractual language too narrowly. The Agreement formed the foundation for the relationship among Price, the Sellers, and Gullan, and identified Gullan as the "procuring cause" of the sale. The core basis of Price's claim was that the Sellers sold Price a defective boat under this Agreement, and Gullan should have disclosed the vessel's salvage history because Gullan was the dual broker identified in the Agreement. Price claimed Gullan improperly "approved . . . the distribution of the [purchase] funds" under the Agreement. The Agreement limited Gullan's obligations pertaining to these matters. The Agreement included

16

the broker as a protected party in the "as is" clause, and expressly stated Gullan was not making any representations or warranty about the yacht or its fitness for use. The court cited, and asked for briefing on, this contractual provision shortly before ruling in Gullan's favor.

On this record, Price's claims *related to* the Agreement, even if some of Price's *legal theories* were based on a statutory scheme. (See *Kangarlou v. Progressive Title Co., Inc.* (2005) 128 Cal.App.4th 1174, 1179 [although escrow holder's duty arose from statute, it "assumed this duty only by entering the contract . . . . Accordingly, the duty arose out of and is not outside the contract"].)[4] The Legislature's imposition of conduct standards on a yacht broker who contracts to assist a buyer or seller does not change the facts showing Gullan owed a duty toward Price because of the contractual relationship among the parties, and those duties were expressly limited by the parties' written agreement. Price himself recognized this fact in his complaint by claiming entitlement to recover his own attorney fees from Gullan based on this same attorney fees provision.

---

[4] *Kangarlou* is distinguishable because the issue concerned whether the claim fell within Civil Code section 1717's "on the contract" requirement. (*Kangarlou, supra,* 128 Cal.App.4th at p. 1178.) But the court's rationale with respect to a statutory duty applies equally here. (*Ibid.*)

17

DISPOSITION

Order affirmed.  Appellant to pay respondents' costs on appeal.


HALLER, J.

WE CONCUR:


HUFFMAN, Acting P. J.


DATO, J.